UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE  COMPANY, GEICO GENERAL INSURANCE COMPANY, and GEICO INDEMNITY COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> BARRON CHIROPRACTIC & REHABILITATION, P.C., PHILIP C. BARRON, D.C., GILBERT S. WEINER, D.C., AND BRIAN T. FARRELL, D.C. <br><br> Defendants. | Civil Action No.: |

**COMPLAINT AND JURY DEMAND**

David O. Brink, (BBO #547370)
    *dbrink@smithbrink.com*
Douglas D. McInnis, (BBO #672935)
    *dmcinnis@smithbrink.com*
Amanda J. Timperman, (BBO #664105)
    *atimperman@smithbrink.com*
SMITH & BRINK, P.C.
350 Granite Street, Suite 2303
Braintree, Massachusetts 02184
Ph.:  (617) 770-2214
Fax: (617) 774-1714

Dated:

**TABLE OF CONTENTS**

I.     **INTRODUCTION**............................................................................................... 1

II.    **PARTIES** ............................................................................................................ 2

III.   **JURISDICTION** ............................................................................................... 5

IV.   **FACTUAL ALLEGATIONS**............................................................................ 5

   A.    Defendants Repeatedly Abuse No-Fault Auto Insurance Benefits. ....................5

   B.    Defendants Engage in Overutilization of Practice. ..............................................9

     1.   Pre-Determined Services for Auto Accident Patients............................ 9

     2.   Inadequate Justifications for Services Rendered. ................................. 14

       a)    Fabricated complaints from patients. ................................. 15

       b)    Generic, templated reports. ................................................ 16

   C.    Defendants Utilize, but Fail to Adequately Supervise, Unlicensed and
       Unqualified Staff. ...............................................................................................17

   D.    Defendants Deceptively Demand Payment from GEICO Concerning
       Services Available for "Free" to Public...............................................................23

   E.    Defendants Convey False Statements Concerning Services. ............................24

     1.   False Representations in *Records*. ......................................................... 24

     2.   False Representations in *Invoices*. ......................................................... 27

     3.   Deceptive Up-Coding of Examinations of Established Patients........................... 32

   F.    Defendants Engage in an Unlawful and Improper Referral Scheme................................36

   G.    Defendants Unfairly and Deceptively Fail to Comply with Regulations
       Concerning Massage Therapy Establishments. ..................................................40

V.    **ALLEGATIONS CONCERNING SPECIFIC INSURANCE CLAIMS** ............. 41

   A.    Claimant K.B.; GEICO Claim No.: 0469332490101038;
       Date of Loss: December 3, 2014. ......................................................................41

   B.    Claimant: X.M.; GEICO Claim No.: 0513693300101013;
       Date of Loss: January 8, 2015. .........................................................................45

   C.    Claimant: D.J.; GEICO Claim No.: 0513693300101013;
       Date of Loss: January 8, 2015..........................................................................49

D.  Claimant: Y.S.; GEICO Claim No.: 0502790800101031;
    Date of Loss: October 5, 2014. .......................................................... 53

E.  Claimant: S.L.; GEICO Claim No.: 0525035630101014;
    Date of Loss: April 7, 2015. .............................................................. 57

F.  Claimant: S.S.; GEICO Claim No.: 0380267880101055;
    Date of Loss: January 24, 2015. ....................................................... 63

G.  Claimant: L.L.; GEICO Claim No.: 0432475500101037;
    Date of Loss: October 23, 2014. ....................................................... 66

H.  Claimant: M.F.; GEICO Claim No.: 0525821350101015;
    Date of Loss: June 15, 2015. ............................................................ 70

I.  Claimant: T.V.; GEICO Claim No.: 0537437870101017;
    Date of Loss: July 2, 2015. ............................................................... 72

J.  Claimant: A.T.; GEICO Claim No.: 0537437870101017;
    Date of Loss: July 2, 2015. ............................................................... 77

K.  Claimant: J.S.; GEICO Claim No.: 0516050280101017;
    Date of Loss: May 30, 2015. ............................................................ 80

L.  Claimant: T.T.V.; GEICO Claim No.: 0453525940101056;
    Date of Loss: August 24, 2015. ........................................................ 82

VI.  DAMAGES ......................................................................................... 86

VII.  CAUSES OF ACTION ...................................................................... 87

COUNT I:  COMMON LAW FRAUD ...................................................... 87

COUNT II:  CIVIL CONSPIRACY ............................................................ 88

COUNT III:  MONEY HAD AND RECEIVED ........................................ 89

COUNT IV:  VIOLATIONS OF MASSACHUSETTS GENERAL LAWS
    CHAPTER 93A ................................................................................ 90

COUNT V:  BREACH OF CONTRACT .................................................... 92

COUNT VI:  INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS
    BUSINESS RELATIONSHIPS ....................................................... 94

VIII.  JURY DEMAND ................................................................................ 94

NOW COME the Plaintiffs, Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company, (collectively, "GEICO" or "Plaintiffs"), by their attorneys, Smith & Brink, P.C., and allege as follows:

## I.     INTRODUCTION

1.     GEICO seeks damages and injunctive relief against Philip Barron, D.C. ("Dr. Barron"); his eponymous professional corporation, Barron Chiropractic & Rehabilitation, P.C. ("Barron Chiropractic"), a Massachusetts based network of three (3) chiropractic clinics; and, current Barron Chiropractic employees, Gilbert Weiner, D.C. ("Dr. Weiner") and Brian Farrell, D.C. ("Dr. Farrell") (collectively, "Defendants").

2.     Defendants damaged GEICO by the following acts and practices: (1) billing for illusory evaluations that uniformly yielded identical, unprofessional and unethical plans for services that were not tailored to the individualized conditions of patients; (2) billing GEICO for execution of the plans, which instructed staff to engage in overutilization of practice for the purpose of excessively drawing-down and profiting from limited available insurance benefits; (3) falsely and deceptively holding out unlicensed and unqualified ancillary staff as qualified health care professionals, and billing for their unsupervised services as though personally provided by Drs. Barron, Weiner and Farrell, respectively (which they were not); (4) compartmentalizing records from courses of treatment for pre-existing injuries to unfairly and deceptively obscure contributing pre-existing conditions and deceptively up-coding evaluations of returning patients resulting in inappropriately inflated insurance charges.

3.     To execute their scheme, Defendants intentionally created inaccurate and incomplete medical records, for GEICO-insured patients and others, anticipating that GEICO and other insurers would be deceived by the vague and generic notes and resulting treatment,

due to lack of clinical knowledge and the impracticability of close monitoring, with the sole

purpose of performing additional and unnecessary treatments, thereby elevating costs.

4.      GEICO foreseeably relied on those statements to their detriment, paid bills,

and incurred other expenditures in insurance investigations that were rendered ineffective by

the unfair and deceptive conduct.  GEICO seeks damages and injunctive relief preventing

Defendants from continuing to perpetrate these improper practices.  GEICO also seeks

injunctive relief concerning reports sent to other patients and insurers, to reduce the likely

cost and expense transmitted to GEICO in the future through subrogation claims from other

insurers, and insured tort claims against its insureds.

## II.    PARTIES

5.      Plaintiffs are all duly organized automobile insurers authorized to transact

business in the Commonwealth of Massachusetts.

6.      Government Employees Insurance Company is a corporation duly organized

under the laws of Maryland, with a principal place of business at 5260 Western Avenue,

Chevy Chase, in Montgomery County, Maryland.

7.      GEICO General Insurance Company is a corporation duly organized under the

laws of Maryland, with a principal place of business at 5260 Western Avenue, Chevy

Chase, in Montgomery County, Maryland.

8.      GEICO Indemnity Company is a corporation duly organized under the laws of

Maryland with a principal place of business at 5260 Western Avenue, Chevy Chase, in

Montgomery County, Maryland.

9.      Although each Plaintiff has separate causes of action against each named

Defendant, arising from the fact that Plaintiffs separately issued policies of insurance that

were implicated in Defendants' scheme, due to the commonalities of the claims and the

- 2 -

standard operating procedures of Plaintiffs, as well as the interest of judicial economy,

Plaintiffs have joined together to bring this action.

10.     Dr. Barron is an individual with a last-known place of residence at 30

Bayberry Road in Canton, Massachusetts.

11.     Barron Chiropractic is a professional corporation organized under the laws of

the Commonwealth of Massachusetts.

12.     Barron Chiropractic engages in the practice of chiropractic medicine and

performs business acts and activities necessary and incidental thereto.

13.     Dr. Barron is the President, Treasurer, Secretary, and sole Director of Barron

Chiropractic.

14.     Dr. Barron is also the sole owner of Be Pain Free PT, Inc. ("Be Pain Free"), a

physical therapy clinic with two (2) locations.

15.     Dr. Barron is the President, Treasurer, and Director of Be Pain Free.

16.     W.M. is the corporate secretary for Be Pain Free.  W.M. is also the office

manager for Barron Chiropractic (hereinafter, "office manager").

17.     The treatment records submitted by Be Pain Free are created on letterhead for

"Barron Chiropractic."

18.     Barron Chiropractic and Be Pain Free share the same telephone number: (617)

298-6325 (NECK).

19.     Barron Chiropractic currently maintains three (3) locations in the

Commonwealth of Massachusetts, which are as follows:

- 1520 Blue Hill Avenue, Mattapan, Massachusetts ("Mattapan clinic");

- 13 Pleasant Street, Malden, Massachusetts ("Malden clinic"); and,

- 456-B Centre Street, Jamaica Plain, Massachusetts ("Jamaica Plain clinic").

20.     The Be Pain Free clinics are located within the Barron Chiropractic clinics in Mattapan and Jamaica Plain.

21.     Each Barron Chiropractic clinic must have a facility license, issued by the Massachusetts Board of Registered Chiropractors ("MBoRC") to operate.

22.     Each Barron Chiropractic clinic must have a Chiropractor of Record ("CHOR"), issued by the MBoRC to operate.

23.     Dr. Barron is currently the CHOR for the Mattapan clinic.

24.     As the CHOR for the Mattapan clinic, Dr. Barron is fully aware of his obligations under the Massachusetts Standards of Practice and Professional Conduct, delineated in 233 Code of Mass. Regs. §§ 4.00-4.15.

25.     Dr. Barron became the CHOR for the Mattapan clinic in July of 2013.

26.     Dr. Farrell is an employee of Barron Chiropractic.

27.     Dr.  Farrell is currently the CHOR for the Malden clinic.

28.     As CHOR of the Malden clinic, Dr. Farrell is fully aware of his obligations under the Massachusetts Standards of Practice and Professional Conduct, delineated in 233 Code of Mass. Regs. §§ 4.00-4.15.

29.     Dr. Farrell is an individual with a last-known place of residence at 6 Barry Avenue, Apt. 1L in Dracut, Massachusetts.

30.     Dr. Weiner is an employee of Barron Chiropractic.

31.     Dr. Weiner is currently the CHOR for the Jamaica Plain clinic.

32.     As CHOR of the Jamaica Plain clinic, Dr. Weiner is fully aware of his obligations under the Massachusetts Standards of Practice and Professional Conduct, delineated in 233 Code of Mass. Regs. §§ 4.00-4.15.

33.     Dr. Weiner is an individual with a last-known place of residence at 41 Brewster Rd., Unit #10 in Stoughton, Massachusetts.

## III.     JURISDICTION

34.     The amount in controversy is in excess of seventy-five thousand dollars ($75,000), exclusive of interest, costs, and attorneys' fees.

35.     The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

36.     The acts giving rise to the causes of action alleged herein were carried out and had their center of gravity in the Commonwealth of Massachusetts.

37.     Venue therefore is proper in the United States District Court for the District of Massachusetts.

38.     Venue is appropriate in the District of Massachusetts under 28 U.S.C. § 1391.

## IV.     FACTUAL ALLEGATIONS

39.     All of the acts and omissions of Defendants described throughout this Complaint were undertaken intentionally.

### A.     Defendants Repeatedly Abuse No-Fault Auto Insurance Benefits.

40.     Since May of 2009, GEICO has issued numerous automobile policies in the Commonwealth of Massachusetts.

41.     Mass. Gen. Laws c. 90, §§ 34A and 34M and Part 2 of the personal auto insurance policy issued by GEICO in the Commonwealth of Massachusetts provides for compulsory Personal Injury Protection ("PIP") coverage, which in summary covers *reasonable expenses for necessary* medical services causally connected to an automobile accident, within the limits of two thousand dollars ($2,000) to eight thousand dollars ($8,000), depending on the specific circumstances of the claim.

42.     Massachusetts No-Fault laws are designed to ensure that victims of motor vehicle accidents have an efficient mechanism to pay for and receive the health care services they need irrespective of whether another person is liable for injuries which the claimant sustained.

43.      Defendants have developed and implemented a scheme to exploit this statutory framework by utilizing the "necessary and reasonable treatment" presumption to wrongfully induce GEICO to pay or settle false and inflated claims, or else face the potential of greater liability and financial exposure under the various statutory provisions.

44.     Pursuant to the Massachusetts No-Fault statute, Mass. Gen. Laws c. 90, § 34M, GEICO must pay PIP benefits, "upon receipt of reasonable proof of the fact and amount of expenses and loss incurred by a claimant."  These payments must be commenced within ten (10) days, or GEICO must provide a written explanation of its intent not to pay, as well as the basis for any delay and/or non-payment.

45.     Pursuant to the Massachusetts No-Fault statute, Mass. Gen. Laws c. 90, § 34M, if due and payable PIP benefits remain unpaid for thirty (30) days, any unpaid person or entity becomes a party to the insurance contract with GEICO, and may bring an action for breach of contract against GEICO for the unpaid benefits.

46.     In order to process these PIP claims in a prompt and reasonable manner, GEICO relies on the assertions of medical providers submitting treatment records, notes, and invoices in support of these claims, that the treatments were in fact provided, and said treatment, as well as the expenses incurred, were reasonable and necessary.

47.     Medical treatments and the invoices associated with those treatments are presumed necessary and reasonable under Mass. Gen. Laws c. 233, § 79G, when sworn to by the licensed provider who rendered and/or administered the treatments.

48.     Numerous patients who pursued treatment at Barron Chiropractic sought to have those services paid directly by GEICO under policies of automobile insurance. Specifically, payment was sought from GEICO under the PIP coverages of the Massachusetts Automobile Insurance Policy.

49.     Barron Chiropractic has demanded payment directly from GEICO for health care services under PIP coverages (Part 2).

50.     GEICO justifiably and detrimentally relied on false and misleading documentation provided by Defendants, causing GEICO to pay unwarranted sums under PIP coverages, and causing it to incur unwarranted costs in investigating insurance claims.

51.     Defendants obtained unwarranted payments via the PIP coverage under policies of automobile insurance issued by generating and submitting fraudulent medical records and invoices to GEICO.

52.     Prior to discovery of the span of Defendants' fraudulent scheme, GEICO satisfied in whole or part, demands sent to it by Barron Chiropractic.  GEICO paid at least **$421,861.27** in satisfaction of invoices submitted by Barron Chiropractic. See GEICO's Damages Chart attached as **Exhibit 3A**[1], incorporated herein in its entirety.

53.     GEICO has been required to investigate demands for payment sent to it directly by Barron Chiropractic.

---

[1] The Civil Action Cover Sheet is filed herewith as **Exhibit 1** and incorporated in its entirety.

54.     GEICO paid at least **$61,315.29** in connection with its investigation and handling of the invoices submitted by Barron Chiropractic (exclusive of payment to Barron Chiropractic).  See GEICO's Damages Chart attached as **Exhibit 3B**, incorporated herein in its entirety.

55.     After investigation, GEICO has rejected numerous other direct demands for payment sent to it by Barron Chiropractic, totaling more than **$169,241.48** See **Exhibit 3A**.

56.     Additionally, the Massachusetts No-Fault statute, Mass. Gen. Laws c. 90, § 34M, mandates that if it is determined that GEICO's insured is ultimately liable for damages resulting from a motor vehicle accident, then any other insurance carrier who tendered PIP benefits as a result of that accident is entitled to subrogation against GEICO to the extent of the PIP payments made, as well as reasonable expenses incurred by the other carrier in making the original PIP payments.

57.     Nonparty tort claimants have issued demands to GEICO under Bodily Injury to Others coverages (Parts 1 and 5), which implicate bills issued by Barron Chiropractic either to GEICO or to other persons or insurers.

58.     Nonparty tort claimants have relied, and foreseeably will rely in the future, on Barron Chiropractic bills to increase or justify the amounts of demands on GEICO insureds, which then are addressed to GEICO under Bodily Injury to Others coverages (Parts 1 and 5).

59.     GEICO has received liability insurance claims from or concerning third persons for payment of amounts under Parts 1 and 5 coverages for Bodily Injury to Others, which were based on alleged injuries that purportedly were treated at Barron Chiropractic.

60.     GEICO continues to conduct an insurance investigation with respect to additional claims submitted for payment.

61.     Barron Chiropractic has not waived its claims and demands, which presents a real and actual dispute.

### B.     Defendants Engage in Overutilization of Practice.

#### 1.     Pre-Determined Services for Auto Accident Patients.

62.     Defendants are required by Massachusetts law, chiropractic principles, and standards of care to prescribe treatment only when necessary, and individualized to each patient's specific needs.

63.     Each patient who has been involved in an automobile accident has individualized needs, both upon first presentation to health care practitioners, and over time. As such, clinical processes and planning should vary from one patient to another, and from one patient encounter to another.

64.     On information and belief, Defendant chiropractors conclude that all motor vehicle accident patients seeking treatment at Barron Chiropractic need chiropractic treatment.

65.     On information and belief, Defendants prescribe an unfair pre-determined protocol, designed solely to financially enrich Defendants rather than to treat or otherwise benefit GEICO-insured patients, and others who were ostensibly injured in a motor vehicle accident.

66.     On information and belief, Defendants prescribe an unfair pre-determined protocol, designed to exceed the monetary tort threshold of two thousand dollars ($2,000) as defined by Mass. Gen. Laws c. 231, § 6D and required to recover against a person who was at fault for an auto accident.

67.     On information and belief, Defendants fail to tailor plans for treatment to the individualized characteristics of motor vehicle accident patients, such as age, gender and/or pre-existing conditions, when evaluating and/or diagnosing their conditions.

68.     On information and belief, in establishing plans for treatment, Defendants fail to consider the mechanics of the motor vehicle accident in which motor vehicle accident patients are involved, such as the amount of damage to the vehicle, the body position of the patient at the moment of impact and/or the location of impact to the vehicle, when evaluating and/or diagnosing their conditions, and ultimately prescribing their treatment plan.

69.     On information and belief, Defendants prescribe a recipe of treatment to GEICO-insured patients that exceeds the documented, individualized needs of the patients. In other words, Defendants submit medical records to GEICO demanding payment for treatments and services that exceed the type, quality and/or amount of the clinically reasonable and necessary chiropractic needs of the patient.

70.     Defendants prescribe and purportedly treat all GEICO-insured patients, as well as other patients ostensibly involved in a motor vehicle accident, for nine to twelve visits with the following passive modalities: electrical stimulation or intersegmental traction (spinal decompression) and hot packs.  See **Exhibit 2**, which is incorporated herein in its entirety.

71.     As discussed, *infra*, Defendants direct unlicensed and unqualified assistants to treat patients each visit *before* the patient is seen by a chiropractor to render these services.

72.     Defendants bill GEICO fifty dollars ($50) under CPT code 97014 each session in which Defendants purportedly render electrical stimulation to a GEICO-insured patient during his or her treatment at Barron Chiropractic.

73.     Defendants bill GEICO thirty-five dollars ($35) under CPT code 97010 each time Defendants purportedly apply a hot pack to a GEICO-insured patient during his or her treatment at Barron Chiropractic.

74.     Electrical stimulation and hot packs, if necessary, can be applied to the patient at home before coming in for a chiropractic adjustment.

75.     Defendants have acknowledged and represent that these services (i.e., electrical stimulation and hot packs) are approved by the United States Food and Drug Administration (the "FDA") for home use and do not require a prescription or pre-therapy assessment by a licensed physician.  See **Exhibit 4** ("Clearly there is no public safety issue involved as electrical stimulation and hot pack therapies are FDA approved for home use without the need for a prescription."); see also **Exhibit 5** ("Forcing the chiropractor to provide a pre-therapy assessment, for free, prior to the application of an FDA approved therapy that can be done at home, without a prescription and without the need for pre-therapy assessment is the definition of an unnecessary regulatory burden."); and **Exhibit 6** ("The FDA has already allowed the public to purchase and apply most of these therapies without a prescription and certainly without the need for a pre-therapy assessment by a licensed doctor.").

76.     On information and belief, Defendants never prescribe the home use of electrical stimulation and hot packs to GEICO-insured patients.  Instead, Defendants exclusively prescribe and render electrical stimulation and hot packs to GEICO-insured patients at Barron Chiropractic clinics.  Id.

77.     On information and belief, Defendants exclusively prescribe in-office electrical stimulation and hot packs to GEICO-insured patients to enable Barron Chiropractic to bill GEICO for these services as if rendered by a licensed chiropractor.

78.     After nine to twelve visits, Defendants prescribe and purportedly treat all GEICO-insured patients, as well as other patients ostensibly involved in a motor vehicle accident, for eight to ten additional visits, with therapeutic exercises.

79.     As discussed, *infra*, Defendants direct unlicensed and unqualified persons to administer these services to patients rather than a chiropractor or other licensed qualified health care professional.

80.     Defendants ultimately discharge all GEICO-insured patients, as well as other patients ostensibly injured in a motor vehicle accident, after nine to twenty-two visits.

81.     Defendants prescribe and provide an ointment called "Sombra Cream" to GEICO-insured patients, as well as other patients ostensibly injured in a motor vehicle accident.

82.     On information and belief, Defendants plan and intend that all auto accident patients adhere to the above-described uniform plan for services.

83.     On information and belief, the courses of services rendered by Defendants deviate from the above-referenced protocol only when patients fail or refuse to follow the plan prescribed by Defendants.

84.     On information and belief, Defendants purposefully render a treatment plan designed to exceed the monetary tort threshold of two thousand dollars ($2,000) as defined by Mass. Gen. Laws c. 231, § 6D and required to recover against a person who was at fault for an auto accident.

85.     On information and belief, whenever Defendants treat patients, who were *not* injured in a motor vehicle accident, Defendants *decline to* prescribe, render or bill the patients for the following modalities: therapeutic exercise, intersegmental traction (spinal decompression), electrical stimulation and/or the application of hot packs.  Philip Barron, DC, DACAN, Dr. Bones 911: A New Look at Chiropractic 129-132 & 134-138 (2014).

86.     On information and belief, when Defendants treat patients whose services are paid in cash or by a health care insurance policy (rather than a PIP automobile policy) (hereinafter referred to as "wellness patients"), Defendants decline to prescribe or render the following products and modalities to wellness patients: Sombra Cream, therapeutic exercise, intersegmental traction (spinal decompression), electrical stimulation and/or the application of hot packs.  Id.

87.     On information and belief, Defendants prescribe the above-referenced treatment modalities to patients covered by PIP benefits.

88.     On information and belief, the sole determinant used by Defendants to determine the applicable protocol for services is whether the invoice for said services will be submitted to an auto insurer, health insurer or state/federal entity like Medicare.

89.     First and foremost, treatment must be based on a patient's needs.  Basing a patient's treatment on whether the invoice for said services will be submitted to an auto insurer, health insurer or state/federal entity like Medicaid is a deviation from accepted chiropractic clinical principles and standards of care.

90.     The pre-determined treatment protocol utilized by Defendants calls for them to resume treatment even when patients stop treating for a significant period of time.

91.     In this regard, Defendants' records fail to document or otherwise explain why GEICO-insured patients have gaps in their treatment.

92.     Defendants' conduct is inconsistent with professional duties and below the applicable standards for a practitioner in their fields.

### 2.     Inadequate Justifications for Services Rendered.

93.     According to the Massachusetts Chiropractic Standards of Practice and Professional Conduct, "[a] chiropractor shall establish and maintain a separate, adequate and accurate clinical record for each patient."  Such records shall be "self-explanatory" and include progress notes for each patient encounter.

94.     Defendants unfairly and deceptively use boilerplate descriptions in substantially all chiropractic files submitted to GEICO.

95.     The boilerplate reports submitted to GEICO by Defendants, fall below applicable professional standards.

96.     Defendants' progress notes are inaccurate, incomplete and designed to justify excessive and unnecessary treatment.

97.     Defendants have a professional duty to create a contemporaneous progress note for each patient visit.

98.     The subjective section of the progress note must record the patient's own perception of his or her progress and symptoms.

99.     The objective section of the progress note must record the patient's current condition, and any response the patient had to past treatment, whether positive or negative.

100.     In total, the patient's progress note must contain enough information to justify and support all services being prescribed and rendered.

a)      *Fabricated complaints from patients.*

101.    Where a patient is unable to adequately communicate with the staff at Barron Chiropractic (i.e., the patient does not share a common language with a member of the staff), this fact must be reported in the patient's records.

102.    When a GEICO-insured patient is unable to communicate with Barron Chiropractic staff (i.e., the patient does not share a common language with a member of the staff), Defendants failed to document this highly significant circumstance.

103.    When a GEICO-insured patient is unable to communicate with Barron Chiropractic staff (i.e., the patient does not share a common language with a member of the staff), Defendants fabricate the subjective section of the patient's progress notes to improperly justify and support a prescription of a pre-determined treatment protocol to GEICO-insured patients that is devoid of individualized medical decision-making, and constitutes a misrepresentation of the medical necessity requirement for coverage of services.

104.    The fabrication of the subjective section of a patient's records demonstrates an unfair and deceptive failure to exercise professional judgment.

105.    By fabricating the subjective section of a patient's records, Defendants unfairly and deceptively failed to comply with professional norms requiring that procedures shall be consistent with the patient's subjective symptoms and objective findings, and shall be based upon a proper clinical rationale, as codified in 233 Code of Mass. Regs. §§ 4.01(3) and 4.05(1)(a), (g).

106.    Defendants' violations of professional norms set forth in the Code of Massachusetts Regulations constitutes *per se* unfair or deceptive acts in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A.  The conduct was deceptive and misleading in connection with the sale of services and comprised

violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."  See 940 Code of Mass. Regs. § 3.16(3).

107.    The false and misleading statements were intended by Defendants to deceive GEICO and to foreseeably cause other persons to assert inflated and unfounded demands for payment relying on Barron Chiropractic invoices, thereby damaging GEICO by fostering disagreement and dispute with third parties.

*b)*    *Generic, templated reports.*

108.    As discussed *supra*, Defendants prescribe therapeutic exercise services to GEICO-insured patients.

109.    Although Defendants submit a CMS-1500 billing form seeking payment for these services, Defendants fail to provide corresponding medical records which detail the therapeutic exercises prescribed.

110.    A complete and accurate patient record would include details as to whether the patient actually participated in said therapy, whether the therapeutic exercises were fully completed (if the patient participated), and the effect of the therapeutic exercise on the patient (whether it be positive or negative).

111.    Details of supportive procedures or therapies, when administered, dispensed or prescribed must be recorded in a patient's progress notes.  Failure to do so is a violation of Massachusetts chiropractic regulation 233 Code of Mass. Regs. § 4.05(1)(h) and a deviation of chiropractic principles and standards.

112.    By failing to provide corresponding medical records pertaining to therapeutic exercise that was purportedly performed by the patient, Defendants prejudiced GEICO's ability to successfully investigate the facts and/or any causal connection concerning the GEICO-insured patients' injuries.

C.    **Defendants Utilize, but Fail to Adequately Supervise,
Unlicensed and Unqualified Staff.**

113.    Defendants unfairly and deceptively direct unskilled and unlicensed staff members to evaluate GEICO-insured patients to determine whether and how to supply services, before the patients are seen by a licensed chiropractor on any given date of service.

114.    Defendants also unfairly and deceptively direct unskilled and unlicensed clinical staff members to *administer* services to GEICO-insured patients before a licensed chiropractor has evaluated the patient on any date of service.

115.    Defendants' conduct in delegating clinical functions for which licensure, registration or certification is required, to unlicensed, unregistered or uncertified persons, is a violation a Defendants' professional duties as provided by applicable regulations, including 233 Code of Mass Regs. §§ 4.02 and 4.03.  See MBoRC Policy Guideline on the Performance of Chiropractic Supportive Procedures and Therapies by Unlicensed Assistants, 09-002, attached as **Exhibit 7A** (hereinafter referred to as "MBoRC Policy Guideline No. 09-002"), and incorporated herein in its entirety.

116.    The applicable Massachusetts regulator (MBoRC) is the only entity authorized by the Commonwealth of Massachusetts to establish and enforce professional standards of practice for chiropractors.  See **Exhibit 7B**.

117.    The regulatory board (MBoRC) issues policy guidelines to clarify the application of statutory and regulatory requirements applicable to chiropractors practicing in the Commonwealth of Massachusetts.  Id.

118.    In 2009, the MBoRC issued Policy Guideline No. 09-002, and it has not at any time rescinded that policy.  Id.

119.    According to explicit regulatory guidance published by the MBoRC, a licensed chiropractor must ensure that any assistant, whom he employs, possesses a sufficient level of education and training in the application and use of the supportive procedure or therapy.

120.    According to explicit regulatory guidance published by the MBoRC, a licensed chiropractor must maintain written documentation of the education and training possessed by each office assistant regarding the proper application and use of supportive procedures and therapies.  See id. at § 4.

121.    The staff members at Barron Chiropractic and Be Pain Free (collectively, "Dr. Barron's clinics") generally have no formal medical education prior to being hired to work for the Barron Chiropractic clinics.

122.    Defendants represent that their chiropractic assistants have been adequately trained.

123.    Defendant, Dr. Barron, represents that his chiropractic assistants are trained (in-office) to render supportive modalities.  See **Exhibits 8B, 8C, 8D, and 8E**.

124.    Defendant, Dr. Barron, represents that his chiropractic assistants are trained (in-office) to provide each patient a pre-therapy evaluation.  See **Exhibits 8B, 8C, 8D, and 8E**.

125.    Defendant, Dr. Barron, represents that his chiropractic assistants, who are trained (in-office) to provide each patient a pre-therapy evaluation, will likely provide superior pre-therapy assessments of patients compared to pre-therapy assessments provided by a licensed chiropractor.  See **Exhibit 5**.

126.    By intentionally delegating the chiropractor's responsibility to determine the anatomical location of the application of electrical stimulation services to patients, Defendants violated applicable regulations concerning the practice of chiropractic, 233 Code of Mass. Regs. § 4.03(2), which is directed to the protection of public health and safety.

127.    Defendants committed an unprofessional practice when they relied on unlicensed persons to independently determine whether a procedure would be rendered without the intervention of a chiropractor or other qualified licensed professional.

128.    Defendants committed an unprofessional practice when they relied on unlicensed persons to independently determine how a procedure would be rendered without the intervention of a chiropractor or other qualified licensed professional.

129.    By intentionally delegating their responsibility as a treating chiropractor to assess their patients before treatment is rendered by unlicensed persons, and then by allowing Barron Chiropractic to issue bills in their name certifying services as having been rendered by the treating chiropractor, Defendants engaged in an unfair and deceptive act and practice.

130.    Defendants refer to their unlicensed assistants as "certified chiropractic assistants."

131.    The unlicensed assistants employed at Barron Chiropractic do not have a license, registration or certification, in any healing art in the Commonwealth of Massachusetts, despite Defendants' assertions otherwise.

132.    In fact, documentation provided by Defendants demonstrates that the unlicensed assistants, who actively render therapeutic exercises at Barron Chiropractic to GEICO-insured patients, and others ostensibly involved in motor vehicle accidents, only

train for <u>one</u> single day to render the same therapeutic exercises that physical therapists and their assistants must be licensed to administer.  See **Exhibits 8B, 8C, 8D, and 8E**.

133.    Physical therapists and their assistants are separately licensed by the Board of Registration in Allied Health Professionals.

134.    Under Massachusetts General Laws, to become licensed, a physical therapy assistant must graduate from a three or four year secondary school, from an accredited education program leading to professional qualification as a physical therapist assistant approved by the Board of Registration in Allied Health Professionals, and demonstrate to the board knowledge of the basic and clinical sciences as they relate to physical therapy and other subjects as the board may deem useful to determine the applicant's fitness, as set forth in Mass. Gen. Laws c. 112, § 23J.

135.    Physical Therapy Aides ("PT Aide") are unlicensed clinical staff members.

136.    On information and belief, when Defendants refer GEICO-insured patients to physical therapy, the patients are exclusively referred to Be Pain Free, and vice-versa.  This improper referral scheme is discussed in greater detail below.

137.    In addition to referring patients to Be Pain Free, Barron Chiropractic also uses the facilities, equipment, and unlicensed employees of Be Pain Free, for treatment of GEICO-insured patients while treating at Barron Chiropractic.

138.    Dr. Barron has represented that he, himself, sends GEICO-insured patients, who are treating at Barron Chiropractic, downstairs (to Be Pain Free) to use equipment and to be treated by Be Pain Free staff, without documenting this fact anywhere in the records.  See **Exhibit 9**.

139.     Dr. Barron has also represented that he directs GEICO-insured patients treating exclusively at Barron Chiropractic downstairs to his physical therapy clinic, Be Pain Free, to be treated by PT Aides (without a formal referral).

140.     The PT Aides employed by Be Pain Free do not have a license, registration or certification, in any healing art in the Commonwealth of Massachusetts, despite Defendants' assertions otherwise.

141.     PT Aides are not qualified to render therapeutic exercises, even if they are doing so under the direct supervision of a licensed physical therapist.  See 259 Code of Mass. Regs. § 5.02(6).

142.     On information and belief, whenever Dr. Barron directs GEICO-insured patients treating at Barron Chiropractic downstairs to his physical therapy clinic, Be Pain Free, for services, he directs unlicensed PT Aides to demonstrate and administer therapeutic exercises to GEICO-insured patients in violation of 259 Code of Mass. Regs. § 5.02(6).

143.     Whenever Dr. Barron sends GEICO-insured patients treating at Barron Chiropractic downstairs to his physical therapy clinic, Be Pain Free, without a formal referral, he omits from all documentation the fact that the treatment was rendered at Be Pain Free by unlicensed PT Aides.

144.     Instead, Dr. Barron misrepresents that the purported therapeutic exercise treatment was, in fact, rendered by him at Barron Chiropractic (and not Be Pain Free) in records and invoices submitted to GEICO.  This conduct is a violation of 233 Code of Mass. Regs. § 4.05.  See Y.S. and S.L. insurance claims discussed *infra*.

145.    There is no clinical benefit to have unlicensed clinical staff administer therapeutic exercises when they are unlicensed to do so and only train (in-office) for <u>one </u>single day.

146.    It indisputably is an unprofessional practice for a chiropractor or other qualified health care professional to allow unlicensed staff to perform any supportive modalities if the chiropractor or other qualified health care professional does not first evaluate the patient on the same visit, as set forth by MBoRC Policy Guideline No. 09-002.

147.    There is no clinical benefit to having an unlicensed staff member treat GEICO-insured patients, and others ostensibly injured in motor vehicle accidents, before they are seen and evaluated (each visit) by a chiropractor or other qualified health care professional.

148.    The purpose of directing unlicensed staff to treat patients before the patients are evaluated by a chiropractor or other qualified health care professional is so the treating chiropractor can see more patients, and bill for more services.  See **<u>Exhibit 5</u>** ("Having the Doctor burdened to providing these low-skilled services is far more likely to lead to poor outcomes, bad clinical decisions and financial hardship.") and ("Anything that decreases the efficiency in the chiropractic office would represent a significant, additional financial burden.").

149.    When supportive therapeutic exercise modalities are rendered by unqualified and unlicensed clinical staff, Defendants and their licensed chiropractors and other qualified health care professionals fail to adequately supervise the rendering of the supportive therapeutic exercise therapies in violation of 233 Code of Mass. Regs. § 4.03(2) and 259 Code of Mass. Regs. § 5.02(6).

150.    Defendants intentionally and knowingly allow unskilled individuals, meaning individuals who are not licensed or trained as licensed chiropractors or in any other healing art, to assist patients with therapeutic exercises in violation of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."  See 940 Code of Mass. Regs. § 3.16(3).

**D.    Defendants Deceptively Demand Payment from GEICO Concerning Services Available for "Free" to Public.**

151.    Defendant Barron Chiropractic advertises to the public Defendants provide "free" trial of spinal decompression to all new patients.

152.    Barron Chiropractic also represents that this service is worth fifty dollars ($50).  See **Exhibit 10**.

153.    Defendants fail to provide this service to GEICO-insured patients for "free."

154.    Instead, Defendants charge new GEICO-insured patients fifty-five dollars ($55) for purported spinal decompression services submitted under CPT code 97012 (from 2008 until 2014), and seventy-five dollars ($75) (since 2015).

155.    Defendant Barron Chiropractic is forbidden from engaging in advertising "which is false, deceptive, misleading or unfair."  See 233 Code of Mass. Regs. § 4.13(1).  Such activity is unprofessional conduct.

156.    Defendant Barron Chiropractic is forbidden from billing GEICO for charges advertised as "free" to others.  Such conduct is "deceit," "gross misconduct in the practice of the profession," and "unprofessional conduct," as set forth in 233 Code of Mass. Regs. § 4.09(3)(f).

157.    Despite the fact that Defendants knew said conduct was a violation of professional and regulatory duties, and constituted deceit, Defendants repeatedly caused

medical records and invoices billing for "free" services to be submitted to GEICO for payment.

### E.   Defendants Convey False Statements Concerning Services.

158.   Defendants create and submit to GEICO, chiropractic medical documentation that is false and misleading with respect to initial evaluations, re-evaluations, progress notes, and treatment modalities.

159.   Records and invoices submitted by Defendants unfairly and deceptively misrepresent the treatment and services purportedly rendered to GEICO-insured patients, for the purpose of inflating the apparent value of those services.

### 1.   False Representations in *Records*.

160.   GEICO is not required to compensate Defendants for purported services to its insureds that were not rendered as represented.

161.   GEICO is entitled to the return of money paid in reliance on Defendants' misrepresentations.

162.   According to the Massachusetts Chiropractic Standards of Practice and Professional Conduct, a chiropractor may prescribe "supportive" procedures and therapies, including intersegmental traction, electrical stimulation, and rehabilitative exercise therapy in "support[ ]" of the primary chiropractic procedure, meaning adjustment.  See Mass. Gen. Laws c. 112, §§ 89, 94, and 97; see also 233 Code of Mass. Regs. § 4.02.

163.   According to the Massachusetts Chiropractic Standards of Practice and Professional Conduct, "[a] chiropractor shall establish and maintain a separate, adequate and accurate clinical record for each patient."  Such records shall be "self-explanatory" and

include "details of supportive procedures or therapies, when administered, dispensed or prescribed."

164.    In violation of professional duties and regulatory requirements, Defendants falsely assert in medical records submitted to GEICO that a licensed chiropractor was the provider with respect to administering "supportive" modalities, which Defendants universally delegate to unlicensed and unqualified staff, who perform the services independently with inadequate supervision.

165.    To unfairly and deceptively conceal the fact that those services were administered by unqualified and unlicensed persons, Defendants falsify medical records as to the identity of the person rendering the treatment, and then omit and/or remove the name of the person who actually provided the treatment.

166.    Defendants knew and intended to falsely identify the individual who was administering the supportive modalities to GEICO-insured patients.

167.    GEICO learned of the true identity of the unlicensed and unqualified staff who actually rendered and/or administered supportive modalities, through the investigative efforts, including, examination under oath testimony (discussed *infra*).

168.    GEICO informed Defendants that it was aware that they were falsely asserting in medical records submitted to GEICO that a licensed chiropractor was the provider with respect to administering "supportive" modalities and services that were actually independently performed by unlicensed and unqualified staff.

169.    Upon notice from GEICO in August of 2015, Defendants began including in the medical records submitted to GEICO, unlabeled and unidentified sequences of letters corresponding to the names of unlicensed and unqualified staff.  On information and belief,

those sequences of letters correspond to the name of the unlicensed and unqualified staff that purportedly rendered services, which the records falsely represented were rendered by a chiropractor.

170.    The subsequent inclusion of unlabeled sequences of letters corresponding to the names of staff, is not a clear and unequivocal disclosure that other information set forth more prominently in the documents, is false and deceptive.

171.    The actions of all Defendants removed reasonable means by which GEICO, and others who received the medical records, could distinguish between services of a licensed chiropractor and an unlicensed and unqualified assistant or staff.

172.    The actions of all Defendants deprived GEICO, and others who received the medical records and invoices, of reasonable means to determine whether the services that were certified by licensed chiropractors were actually performed (if at all) by the named licensed chiropractor.

173.    By falsely claiming in their medical records and invoices that a licensed chiropractor had rendered the supportive procedures to GEICO-insured patients, Defendants made a false statement of a material fact in the submission of each claim in violation of Massachusetts chiropractic regulations 233 Code of Mass. Regs. §§ 4.05, 4.09(3)(d), and 4.11(2)(a).

174.    Defendants' violation of the above-referenced Massachusetts regulations is a per se unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A, as they made a failure to disclose material information, contrary to a duty to disclose, in connection with the sale of services and

comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare." See 940 Code of Mass. Regs. § 3.16(3).

175. The false and misleading statements foreseeably will cause other persons to assert inflated and unfounded demands for payment relying on Barron Chiropractic invoices, thereby damaging GEICO by fostering disagreement and dispute with third parties.

## 2. False Representations in *Invoices*.

176. In invoices submitted to GEICO, Defendants categorize their services by utilizing a billing code system created by the American Medical Association ("AMA"), which relies on unique numeric codes known as "Current Procedure Terminology codes" or "CPT codes."

177. By including CPT codes on their bills, Defendants represent to GEICO that the listed modalities itemized on the records and bills were performed in a manner required by the AMA's CPT code requirements and AMA guidelines.

178. Defendants submit medical records and invoices containing and/or utilizing improper and/or deceptive CPT codes, in a manner that unfairly and deceptively renders non-compensable or less valuable services to appear as both compensable and valuable.

179. Dr. Barron is a member of the American Chiropractic Association ("ACA").

180. The ACA acknowledges that "[i]ntentional misuse of CPT coding constitutes fraud in both public and private sectors." See **Exhibit 12**.

181. MBoRC Policy Guideline No. 09-002(5) mandates that a "licensed chiropractor must properly report and code any supportive procedure or therapy in a manner consistent with appropriate reporting and coding requirements" when using unlicensed assistants. See **Exhibit 7** at § 5.

182.    CPT code 97110 is defined by the AMA to indicate that a physician or other qualified health care professional rendered one-on-one assistance to a patient performing therapeutic exercise.

183.    CPT code 97110 specifically describes the rendering of a therapeutic procedure "intended to effect change through the application of clinical skills and/or services that attempt to improve function."

184.    The submission of an invoice using CPT code 97110 constitutes an assertion by Defendants that a "physician or other qualified health care professional" treated the GEICO-insured patient through direct (one-on-one) interaction, during therapeutic exercises to develop strength, endurance, range of motion, and flexibility.

185.    The AMA unambiguously defines a qualified health care professional as an "individual who is qualified by education, training, licensure/regulation (when applicable). . . who performs a professional service within his/her scope of practice and independently reports that professional service."

186.    After receiving instruction on how to perform therapeutic exercises (often from unqualified persons), patients were often left unsupervised to perform the therapeutic exercises for which Defendants falsely claimed patients received one-on-one direct supervision.

187.    Defendants rarely provided direct one-on-one supervision to patients at issue in this Complaint, even though GEICO was billed for such treatment.

188.    In instances when direct one-one-one supervision was provided to patients at issue in this Complaint, Defendants often delegated the task to unlicensed and unqualified ancillary staff.

189.    The unqualified persons who demonstrate and/or administer the therapeutic exercise treatment failed to report that they are the individual rendering and/or administering those services.

190.    The records and bills submitted by Defendants were routinely false and misleading in that no qualified person assisted patients one-on-one as to justify any charge for services under CPT code 97110.

191.    Defendants submit invoices by way of a Health Insurance Claim Form ("CMS-1500"), a claim form used by health care providers to invoice insurance companies for health care services.  See sample CMS-1500 form attached as **Exhibit 13**, which is incorporated herein in its entirety.

192.    All CMS-1500 invoices submitted by Defendants affirm that the statements contained in them are true, complete, and not misleading.

193.    By falsely claiming in their invoices that a licensed chiropractor had rendered the supportive procedures to GEICO-insured patients, Defendants made a false statement of a material fact in the submission of each claim in violation of Massachusetts chiropractic regulations 233 Code of Mass. Regs. §§ 4.09(3)(d) and 4.11(2)(a).

194.    Defendants' violation of the above-referenced Massachusetts regulations is a per se unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A as Defendants' failure to disclose was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."  See 940 Code of Mass. Regs. § 3.16(3).

195.    The false and misleading statements foreseeably will cause other persons to assert inflated and unfounded demands for payment relying on Barron Chiropractic bills, and thereby damaging GEICO by fostering disagreement and dispute with third parties.

196.    GEICO is not required to compensate Defendants for purported services to its insureds that were not rendered.

197.    GEICO is entitled to the return of money paid in reliance on Defendants' misrepresentations.

198.    Defendants billed GEICO for services that were not actually provided to the patients at issue in this Complaint.

199.    Defendants are and were aware that submitting bills to GEICO for services that were not rendered is a violation of Massachusetts chiropractic regulations 233 Code of Mass. Regs. §§ 4.05, 4.09(3)(d) and a deviation of chiropractic standards of care.

200.    In July of 2009, following an investigation by the MBoRC, Defendant, Dr. Barron, on behalf of his practice, Defendant, Barron Chiropractic, executed a Consent Agreement concerning In the Matter of Barron Chiropractic & Rehab, CH License No. 10, Docket No. CH-08-093, attached hereto as **Exhibit 14**, and fully incorporated herein by reference ("Consent Agreement").

201.    In the Consent Agreement, Defendants acknowledged that the MBoRC could have found that (1) "one or more" of Barron Chiropractic's employees (including the Mattapan CHOR at the time) failed to adequately or accurately document services in chiropractic records, and billed for services that were not rendered, in violation of 233 Code of Mass. Regs. §§ 4.05 and 4.09. Id.

202.     Despite being disciplined by the MBoRC for this conduct, and knowing that such conduct constitutes a violation of 233 Code of Mass. Regs. §§ 4.05 and 4.09(3)(d), Defendants continue to represent in records and invoices, submitted to GEICO, that a licensed chiropractor administered treatment and/or services to GEICO-insured patients, when, in fact, the services were not rendered at all.

203.     GEICO learned Defendants submitted invoices for services not rendered through its investigative efforts, including examinations under oath testimony (discussed *infra*).

204.     Barron Chiropractic also improperly reports the facility location where services are provided on the CMS-1500 invoices.

205.     By way of example only, X.M. and D.J., GEICO Claim No.: 0513693300101013, were involved in the same motor vehicle accident on January 8, 2015.

206.     Both X.M. and D.J. presented at Barron Chiropractic's Jamaica Plain clinic for treatment.

207.     On March 5, 2015, Barron Chiropractic submitted CMS-1500 invoices for both X.M. and D.J., for dates of services that occurred during the month of February 2015 at Barron Chiropractic's Jamaica Plain clinic.  See **Exhibit 15**; see also **Exhibit 16**.

208.     Four days later, on March 9, 2015, Barron Chiropractic submitted CMS-1500 invoices for both X.M. and D.J. for two additional dates of service in the month of February 2015, reporting the services were rendered at the Barron Chiropractic's Mattapan clinic. See **Exhibit 15**; see also **Exhibit 16**.

209.     Barron Chiropractic submitted CMS-1500 invoices for both X.M. and D.J. reporting that each claimant was treated at the Barron Chiropractic's Mattapan clinic on

January 22, 2015, January 29, 2015, February 7, 2015, and February 12, 2015.  See **Exhibit 15**; see also **Exhibit 16**.

210.    On information and belief, X.M. and D.J. never treated at the Mattapan clinic.

211.    Defendants submission of records and invoices that treatment was rendered to X.M. and D.J. at the Mattapan clinic is a false statement of a material fact in the submission of each claim in violation of Massachusetts chiropractic regulations 233 Code of Mass. Regs. §§ 4.09(3)(d) and 4.11(2)(a).

212.    Defendants' violation of the above-referenced Massachusetts regulations is a per se unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A, as Defendants' failure to disclose was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."  See 940 Code of Mass. Regs. § 3.16(3).

213.    The false and misleading statements foreseeably will cause other persons to assert inflated and unfounded demands for payment relying on Barron Chiropractic invoices, thereby damaging GEICO by fostering disagreement and dispute with third parties.

214.    Defendants' representations to GEICO that patients were either examined or treated by a chiropractor when the services were not rendered is unfair and deceptive.

### 3.    Deceptive Up-Coding of Examinations of Established Patients.

215.    Defendants "up-code" the services purportedly being rendered to GEICO-insured patients, while simultaneously ignoring prior injuries and prior chiropractic treatment when examining a patient and selecting an appropriate course of treatment.  This conduct is a

violation of 233 Code of Mass. Regs. § 4.09(c) and a deviation from Massachusetts chiropractic standards of care.

216.     Up-coding is a practice in which a provider's services are misrepresented by reporting CPT codes that bill at a higher rate than the service that was actually performed, resulting in a higher payment to the payor which is not warranted.

217.     Defendants submitted records and bills to GEICO, and others, documenting compensation for patient examinations.

218.     CPT code **99203** specifically is used by Defendants to invoice and demand payment from GEICO for evaluation and management services provided to a ***new patient***.

219.     CPT codes **99213** specifically is used by Defendants to bill for evaluation and management services provided to an ***established patient***.

220.     To qualify as an established patient under the CPT codes, the patient must have received treatment from the billing chiropractor or another chiropractor from the billing chiropractor's group and/or facility "within three years."

221.     In that regard, Defendants submitted invoices to GEICO using the CPT code 99203, which represents an evaluation of a "**new patient**," meaning a patient who has not received medical services from the doctor within the previous three (3) years.

222.     Defendants charged GEICO two hundred and sixty dollars ($260) for a "**new patient**" examination.

223.     Defendants unfairly and deceptively use CPT code 99203 to bill for examinations of patients who were not "**new patients**."

224.     Defendants increased their billings to GEICO and avoided scrutiny for longer examinations, by unfairly and deceptively billing examinations of "**established patients**" as if they were "**new patients**."

225.     The associated CPT code for an evaluation of an "**established patient**" is 99213.  CPT code 99213 is an "office or other outpatient visit for evaluation and management of an "**established patient**" only.  (Emphasis added).

226.     The CPT code system estimates that exams of **established** patients are less time-consuming than exams of **new** patients.  The CPT code system is based on a typical amount of time of thirty (30) minutes spent by the health care provider with a **new** patient under CPT code 99203, but only fifteen (15) minutes with an **established** patient with similarly complex problems under CPT code 99213.

227.     Thus by unfairly and deceptively classifying **established** patients as **new** patients, Defendants deceptively are reporting that it would be reasonable and necessary to spend twice as much time addressing the patient's health care needs, and this constitutes "up-coding."

228.     Defendants charged GEICO one hundred and fifty dollars ($150) under CPT code 99213 for an evaluation of an "**established patient**".

229.     As a matter of practice, by misidentifying "**established patients**" as "**new patients**," Defendants increased their bills by one hundred and ten dollars ($110) per evaluation, without incurring additional scrutiny from insurance claims handlers.

230.     Charges which are based on a level of coding which is not consistent with the patient's clinical history, the complexity of the clinical decision-making involved in the diagnosis and/or treatment of the patient, or the nature of the care provided to that patient is

- 34 -

a violation of 233 Code of Mass. Regs. § 4.09(c) and a deviation from applicable professional standards of chiropractic care.

231.    By falsely claiming in their invoices that established patients were new patients, Defendants made a false statement of a material fact in the submission of the claims in violation of Massachusetts chiropractic regulations 233 Code of Mass. Regs. §§ 4.09(d), 4.11(2)(a), and MBoRC Policy Guideline No. 09-002(5).

232.    Defendants' violation of the above-referenced Massachusetts regulations is a per se unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A as Defendants' failure to disclose was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare." See 940 Code of Mass. Regs. § 3.16(3).

233.    Defendants' willingness to misrepresent that **established** patients were **new** patients also is an integral part of Defendants' strategy of concealing prior contributing injuries and causes for chiropractic treatment, to ensure that bills can be sent to casualty insurers like GEICO at reimbursement rates higher than contract-based rates applicable to other kinds of insurance.

234.    Defendants foster referral relationships with attorneys concentrating in accidental injury matters by actively deceiving casualty insurers like GEICO concerning the **established** patient status of claimants.

235.    Defendants' deceit damages GEICO.

F.      **Defendants Engage in an Unlawful and Improper**
        **Referral Scheme.**

236.    On information and belief, Dr. Barron has authority and responsibility over Be Pain Free for hiring, managing, directing, supervising and terminating all employees, including physical therapists.

237.    In order to operate a physical therapy facility in Massachusetts, the facility must have a Physical Therapy Compliance Officer ("PTCO").

238.    A PTCO must be a licensed physical therapist.

239.    Dr. Barron is not a licensed physical therapist (he is a chiropractor).

240.    Dr. Barron hired and/or contracted Kalpita Rane, DPT ("Dr. Rane") as a physical therapist at Be Pain Free.

241.    Dr. Rane is the PTCO for both Be Pain Free clinics.

242.    As the PTCO, Dr. Rane is responsible for Be Pain Free's compliance with Massachusetts laws and regulations.

243.    All GEICO-insured patients treating at Be Pain Free who purportedly require chiropractic treatment are unilaterally referred to Barron Chiropractic for additional treatment, which was subsequently billed to GEICO.

244.    On information and belief, Dr. Barron directs the employees of Be Pain Free to refer physical therapy patients (in need of chiropractic treatment) exclusively to Barron Chiropractic.

245.    The clinical rationale for referring GEICO-insured patients to a chiropractor (let alone Barron Chiropractic) was not documented in any of the Be Pain Free records submitted to GEICO.

246.    On information and belief, Be Pain Free, its agents, servants, or employees improperly refer GEICO-insured patients to Barron Chiropractic for the purpose of deriving additional income for Dr. Barron.

247.    In the Commonwealth of Massachusetts, a patient may receive physical therapy services from a DPT without first receiving a prescription from a medical doctor (MD).  The American Physical Therapy Association ("APTA") Guide for Professional Conduct ( "the APTA Guide"), emphasizes that a physical therapist "has primary responsibility for the physical therapy care of a patient and shall make independent judgments regarding that care consistent with accepted professional standards."  In that regard, the APTA Guide provides that once a patient is accepted for physical therapy treatment, the physical therapist is responsible for:

> "the examination, evaluation, and diagnosis of that individual; the prognosis and intervention; re-examination and modification of the plan of care, and the maintenance of adequate records, including progress reports[;…] establish[ing] the plan of care and […] provid[ing] and/or supervis[ing] and direct[ing] the appropriate interventions."

248.    The APTA Guide further provides only for referral to "an appropriate practitioner" in the seemingly rare occasion that the physical therapist's findings are outside of the scope of his or her "knowledge, experience, or expertise or indicate the need for care outside the scope of physical therapy."  Notably, Massachusetts Regulation 259 Code of Mass. Regs. § 5.05(1) adopted the APTA Guide, including the before mentioned provisions.

249.    On information and belief, Be Pain Free records rarely, if ever, document that a given patient's condition was outside the scope of the physical therapist's "knowledge, experience or expertise," or documented that a patient's care was outside the scope of physical therapy before the GEICO-insured patient was referred to Barron Chiropractic.

250.     In referring patients to chiropractic care, Be Pain Free acted contrary to the obligations of physical therapists to make independent judgments, to take primary responsibility for the care of their patients, and to make independent judgments concerning patient care.

251.     On information and belief, whenever a patient is referred to Barron Chiropractic by Be Pain Free, no staff member of Be Pain Free or Barron Chiropractic informs the patient that they could seek chiropractic treatment elsewhere if they so desired.

252.     On information and belief, whenever a patient is referred to Barron Chiropractic by Be Pain Free, no staff member of Be Pain Free or Barron Chiropractic informs the patient (in writing) that Dr. Barron owns Be Pain Free and Barron Chiropractic.

253.     On information and belief, whenever a patient is referred to Barron Chiropractic by Be Pain Free, no staff member of Be Pain Free or Barron Chiropractic informs the patient (orally) that Dr. Barron owns Be Pain Free and Barron Chiropractic.

254.     On information and belief, Dr. Barron and/or Barron Chiropractic, its agents, servants, or employees improperly refer GEICO-insured patients to Be Pain Free for the purpose of deriving income.  See **Exhibit 11**.

255.     On information and belief, whenever a patient is referred to Be Pain Free by Barron Chiropractic, no staff member of Be Pain Free or Barron Chiropractic informs the patient that they could seek physical therapy treatment elsewhere if they so desired.

256.     On information and belief, whenever a patient is referred to Be Pain Free by Barron Chiropractic, no staff member of Be Pain Free or Barron Chiropractic informs the patient (in writing) that Dr. Barron owns Be Pain Free and Barron Chiropractic.

257.     On information and belief, whenever a patient is referred to Be Pain Free by Barron Chiropractic, no staff member of Be Pain Free or Barron Chiropractic informs the patient (orally) that Dr. Barron owns Be Pain Free and Barron Chiropractic.

258.     Dr. Barron's position to benefit financially from the direct referral of patients to and from Be Pain Free and Barron Chiropractic encourages the overutilization of treatment.

259.     As the owner of Barron Chiropractic and Be Pain Free, whenever Dr. Barron instructs the employees of Be Pain Free to exclusively refer patients to a Barron Chiropractic clinic, and vice-versa, Dr. Barron and/or Barron Chiropractic are in violation of Massachusetts Chiropractic regulation 233 Code of Mass. Regs. § 4.12(1), which states:

> "No licensed chiropractor or agent, servant or employee of a licensed chiropractor or of a chiropractic facility shall offer, solicit or receive any remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, leasing, ordering, or arranging for any product, facility, service or item for any patient under his or her care."

260.     Be Pain Free failed to disclose the referral relationship to Barron Chiropractic patients, including GEICO-insured patients and others, in violation of 259 Code of Mass. Regs. § 5.05(2)-(3) and Mass. Gen. Laws c. 112, § 23P1/2.

261.     The violation of the above-referenced Massachusetts regulations by Barron Chiropractic, Dr. Barron, and their agents is a per se unfair or deceptive act in the conduct of trade or commerce within the meaning of Massachusetts General Laws chapter 93A, as Defendants' failure to disclose was deceptive and misleading in connection with the sale of services and comprised violations of the "statutes, rules, regulations or laws meant for the protection of the public's health, safety and welfare."  See 940 Code of Mass. Regs. § 3.16(3).

G.   **Defendants Unfairly and Deceptively Fail to Comply
with Regulations Concerning Massage Therapy
Establishments.**

262.   On information and belief, Barron Chiropractic has employed licensed massage therapists (LMTs) to render massage therapy to its patients, including GEICO-insured patients and others in violation of 269 Code of Mass. Regs. § 6.03.

263.   On information and belief, Barron Chiropractic is not a licensed Massage Therapy Establishment.

264.   A Massage Therapy Establishment is defined as, "Any location, or portion thereof, which advertises and/or provides Massage Therapy services on the premises on a Regular basis," meaning "more than eight hours in a one week period," "which has been licensed by the Board pursuant to Massachusetts General Laws chapter 112, § 227 through 236." 269 Code of Mass. Regs. § 6.02.

265.   "Massage Therapy shall only be delivered or offered at any location or portion thereof holding a valid Massage Therapy Establishment license issued by the appropriate licensing Board or otherwise exempted from licensure under 269 Code of Mass. Regs. § 6.02(4)." See 269 Code of Mass. Regs. § 6.03(1).

266.   On information and belief, Barron Chiropractic fails to qualify for any exemption from the requirement to hold a valid Massage Therapy Establishment license.  See 269 Code of Mass. Regs. § 6.03(8).

267.   On information and belief, Barron Chiropractic has advertised and provided massage therapy services via LMTs, which is outside the scope of services rendered by the treating chiropractor.  As such, Barron Chiropractic is required to hold a valid Massage Therapy Establishment license pursuant to the rules and regulations applicable to Massage Therapy Establishment.

268.    Barron Chiropractic has employed at least one LMT to render massage to patients, including GEICO-insured patients, without holding a valid Massage Therapy Establishment license in violation of 269 Code of Mass. Regs. § 6.00.

### V.    ALLEGATIONS CONCERNING SPECIFIC INSURANCE CLAIMS

269.    The above-referenced allegations set forth patterns and practices of conduct by Defendants (discussed *supra)* concerning multiple specific patients and insurance claims.

270.    The patterns and practices are demonstrated by the following exemplar instances of conduct concerning specific patients and claims, which are illustrative of the acts of fraud and deceit but are not exhaustive of all specific instances of the conduct.

**A.    Claimant K.B.;
GEICO Claim No.: 0469332490101038;
Date of Loss: December 3, 2014.**

271.    On December 3, 2014, K.B. was reportedly involved in a motor vehicle accident.

272.    K.B. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

273.    Barron Chiropractic submitted records and invoices to GEICO seeking payment for services purportedly rendered to K.B.

274.    These records and invoices were certified by Dr. Farrell.

275.    K.B. was prescribed a pre-determined regime of services devoid of individualized medical based decision-making.

276.    GEICO investigated Barron Chiropractic's requests for payment, and K.B. provided a sworn statement.

277.   While at Barron Chiropractic, K.B. was purportedly treated with spinal decompression, which Barron Chiropractic submitted to GEICO for payment under CPT code 97112.  See exemplar invoices attached as **Exhibit 17**.

278.   Barron Chiropractic had advertised this service as "free" to new patients.

279.   K.B. was a new patient at Barron Chiropractic.

280.   Barron Chiropractic, however, unfairly and deceptively charged GEICO seventy-five dollars ($75) for the spinal decompression service on the following dates: December 22, 2014 and January 5, 2015.  See id.

281.   Subsequent to an initial examination on her first day, K.B. met with Dr. Farrell only after receiving electrical stimulation by an unlicensed chiropractic assistant, or after assistance with therapeutic exercise by unlicensed and unqualified persons.

282.   In that regard, K.B. testified in part, as follows:

Q.   When you got electrical stimulation, when would you get it, at the beginning of the treatment, or after you saw the doctor?

A.   Ninety-nine percent of the time at the beginning?

Q.   So, you would come in, sign in, Glossia [the front desk receptionist] would put on the electric stimulation and the hot packs, turn it on, come back periodically and then take it off, and then the doctor would come and see you, is that correct?

A.   Yes…

See **Exhibit 18** at pp. 42:19-43:4.

283.   Dr. Farrell's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), **before** he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically

indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

284.     This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

285.     Dr. Farrell's delegation of supportive modalities to unlicensed and unqualified staff on each visit, prior to any examination by Dr. Farrell on the same visit, was a violation of Massachusetts chiropractic regulations, policy and the standard of care.

286.     Defendants then misrepresented in records and invoices submitted to GEICO that Dr. Farrell rendered the electrical stimulation services and application of hot packs to K.B.

287.     Dr. Farrell's receptionist/assistant is not identified in any of the records or invoices submitted to GEICO.  In fact, the only provider identified at all is Dr. Farrell.

288.     Barron Chiropractic's failure to document the purported involvement of his assistant in K.B.'s medical records and invoices submitted to GEICO is in violation of 233 Code of Mass. Regs. § 4.05(1), which requires a chiropractor "maintain a separate, adequate and accurate written clinical record for each patient."

289.     Barron Chiropractic also represented in its records and invoices that Dr. Farrell administered therapeutic exercises to K.B. on a one-on-one basis.

290.     In that regard, K.B. testified in part, as follows:

> Q.     Does anyone watch you while you use the stationary bike?
>
> A.     No.
>
> Q.     Does anyone watch you while you're doing [exercises on] the hula hoop chair?
>
> A.     No.

See id. at p. 41:13-19 (emphasis added).

291.    Dr. Farrell failed to properly supervise K.B.'s therapeutic exercises at Barron Chiropractic.

292.    In response to GEICO's denial, Barron Chiropractic sent a rebuttal letter to GEICO, dated June 3, 2015, authored by Dr. Farrell.  See **Exhibit 4**.

293.    In his June 3, 2015 rebuttal letter, Dr. Farrell confirmed that Barron Chiropractic staff member, Glaucia Peixoto ("Ms. Peixoto"),[2] was the staff member who actually attended the electrical stimulation and hot pack modalities billed in connection with patient K.B.  See id.

294.    In his June 3, 2015 rebuttal letter, Dr. Farrell also claimed that Ms. Peixoto supervised K.B. during her therapeutic exercises.

295.    Dr. Farrell further misrepresented that Ms. Peixoto is a "qualified health care professional" as she "was trained and certified in our office as a Chiropractic Assistant."  Id.

296.    According to public records, Ms. Peixoto is not licensed in any healing art in the Commonwealth of Massachusetts.

297.    Ms. Peixoto is not qualified to administer/render therapeutic exercises.

298.    According to the purported training records enclosed with Dr. Farrell's June 3, 2015 letter, Ms. Peixoto was only trained at Barron Chiropractic for one single day to administer/render therapeutic exercises.  See id.; see also **Exhibit 8C**.

---

[2] Barron Chiropractic provided GEICO with inconsistent spellings of the name of Barron Chiropractic staff member, Glaucia Peixoto.  See **Exhibit 4** ("Glaucia Peixoto"); see also **Exhibit 8A** ("Glaucia Peitoxoi"); **Exhibit 8C** ("Glaucia Peixoto").  In order to reduce confusion surrounding the before mentioned spelling inconsistency, GEICO refers to Barron Chiropractic staff member Glaucia Peixoto or Glaucia Peitoxoi as "Ms. Peixoto" throughout this Complaint.

299.     The amounts that Barron Chiropractic billed to GEICO with respect to K.B. overall, and specifically with respect to supervision of therapeutic exercises and electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

300.     Despite the fact that Defendants knew that the above-referenced conduct violates professional duties and Massachusetts regulations, and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

**B.     Claimant: X.M.;
GEICO Claim No.: 0513693300101013;
Date of Loss: January 8, 2015.**

301.     On January 8, 2015, X.M. was reportedly involved in a motor vehicle accident.

302.     X.M. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Jamaica Plain clinic.

303.     Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to X.M.

304.     These records and invoices were certified by Kevin Daly, D.C. ("Dr. Daly") and Dr. Weiner.

305.     X.M. was prescribed a pre-determined course of services devoid of individualized medical based decision-making.

306.     GEICO investigated Barron Chiropractic's requests for payment, and X.M. provided a sworn statement.

307.     X.M. chose Barron Chiropractic as she was previously treating there as a result of a *prior* accident that occurred on June 16, 2014, just <u>six months</u> earlier.

308.     X.M. previously treated at Barron Chiropractic for injuries purportedly related to her *prior* motor vehicle accident for approximately three (3) months.

309.     Although X.M. was an established patient at Barron Chiropractic, Barron Chiropractic billed GEICO for X.M.'s initial examination as if she was a new patient (using CPT code 99203) at a higher rate.  See **Exhibit 15**.

310.     X.M. testified in part, as follows:

> Q.     Did you tell [the staff at Barron Chiropractic] that you treated there up until September 2014?
>
> A.     Yes, I told them that some months ago I had been treated there.
>
> Q.     Was it the same people working there?
>
> A.     One woman was no longer there.
>
> Q.     Was Doctor Weiner there?
>
> A.     Yes.
>
> Q.     Following the June 8, 2015 accident did you see Doctor Weiner every time you went to Barron Chiropractic?
>
> A.     Yes.

See **Exhibit 19** at pp. 70:23-71:10.

311.     X.M.'s testimony conflicts with Barron Chiropractic invoices from April 10, 2015 and April 14, 2015, which provide Dr. Daly as X.M.'s treating chiropractor. See **Exhibit 15**.

312.     On information and belief, Dr. Daly's medical records (and corresponding invoices) were fabricated for the sole purpose of driving up costs.

313.     In Barron Chiropractic's records from April 17, 2015, Dr. Weiner attributed X.M.'s lower back disability to both the subject accident (on January 8, 2015) and the prior accident (on June 16, 2014).  First, he stated, "It is my professional opinion to a reasonable medical certainty that there was a direct causal relationship between the symptoms

manifested and disabilities demonstrated by this patient and her accident of 1/08/2015."

See **Exhibit 15**.

314.    Dr. Weiner then asserted that X.M.'s "MVA of 6/16/14 was the primary and sole instigation for this patient's low back disability."  These conflicting diagnoses suggest Dr. Weiner extracted one or both of the before-mentioned statements, in whole or in part, from pre-existing medical records, rather than properly documenting his patient-specific diagnosis of X.M.  See id.

315.    X.M. would only meet with Dr. Weiner after receiving electrical stimulation by an unlicensed chiropractic assistant, or after assistance with therapeutic exercises by persons not licensed as chiropractors, physical therapists, or physical therapy assistants.

316.    In that regard specifically, X.M. testified in part, as follows:

Q.    So, if I'm understanding you correctly, you would come in, one of the women would put electric stimulation on you?

A.    Yes.

Q.    When the electric stimulation was done the doctor would come and see you?

A.    Yeah, the doctor would always come.

* * *

Q.    And after you had your electric stimulation the doctor would come see you, correct?

A.    When the girls finished, after the electric treatment, the doctor would come examine me.

See **Exhibit 19** at pp. 59:4-23 and 63:8-11.

317.    This practice is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any

supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

318.     These professionals are distinct from unlicensed "clinical staff."

319.     Defendants then misrepresented in records and invoices submitted to GEICO that it was Dr. Wiener and Dr. Daly that exclusively rendered the electrical stimulation services and application of hot packs to X.M.  See **Exhibit 15**.

320.     The treating chiropractor's delegation of supportive modalities to unqualified staff on each visit, **before** he determined that the modalities were reasonable and necessary, was a violation of Massachusetts chiropractic regulations, policy, and the standard of care.

321.     X.M. testified her treatment at Barron Chiropractic did not reduce her alleged lower back pain following the January 8, 2015 loss.

322.     In that regard, X.M. testified in part, as follows:

> Q.     Okay.  Did you tell Doctor Weiner that it was not helping?
> A.     I told him that my lower back pain continued.
> Q.     And what did he say?
> A.     They indicated me to go to the study.
> Q.     He wanted you to get an MRI perhaps?
> A.     That is correct.

See **Exhibit 19** at pp. 85:19-86:1.

323.     X.M. was discharged from treatment at Barron Chiropractic on April 17, 2015.  See **Exhibit 15**.

324.     Barron Chiropractic medical records from X.M.'s April 15, 2015 visit indicate X.M. "had appt with Pain Clinic this week."  Id.

325.     Barron Chiropractic medical records from X.M.'s April 15, 2015 visit further indicate X.M. "responded favorably to her treatment" and "tolerated treatment well."  Id.

326.    Due to her ongoing pain, X.M. underwent disc surgery on September 18, 2015 at Brigham & Women's Faulkner Hospital in Boston, Massachusetts.  See **Exhibit 19** at p. 77:10-15.

327.    Barron Chiropractic medical records misrepresented that X.M. responded favorably to treatment and reported X.M.'s low back pain as moderate in direct contradiction to X.M.'s testimony that her low back pain was severe, which is supported by her subsequent September 18, 2015 disc surgery.

328.    On information and belief, Barron Chiropractic continued to instruct X.M. to follow the Barron Chiropractic treatment protocol despite the fact that it was not alleviating her pain and/or injuries.

329.    On information and belief, Barron Chiropractic continued to direct X.M. to follow the Barron Chiropractic treatment protocol in order to bill GEICO for more services.

330.    The amounts that Barron Chiropractic billed to GEICO with respect to X.M. overall, and specifically with respect to supervision of therapeutic exercises and electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

331.    Despite the fact that Defendants knew that the above-referenced conduct violates professional duties and Massachusetts regulations, and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

          **C.**      **Claimant: D.J.;**
                  **GEICO Claim No.: 0513693300101013;**
                  **Date of Loss: January 8, 2015.**

332.    On January 8, 2015, D.J. was reportedly involved in a motor vehicle accident.

333.    D.J. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

334.     Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to D.J.

335.     These records and invoices were certified by Dr. Daly and Dr. Weiner.

336.     D.J. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

337.     GEICO investigated Barron Chiropractic's requests for payment, and D.J. provided a sworn statement.

338.     D.J. confirmed that the only chiropractor involved in her treatment at Barron Chiropractic was Dr. Weiner.

339.     Barron Chiropractic, however, submitted records and bills to GEICO seeking compensation for treatment and services purportedly rendered to D.J. by two (2) chiropractors, Dr. Daly and Dr. Weiner.  See **Exhibit 16**.

340.     On information and belief, Defendants misrepresented in the submission of records and invoices that Dr. Daly rendered treatment and services to D.J.

341.     After an initial examination on her first day, upon arrival at Barron Chiropractic, D.J. would be treated with electrical stimulation by an unlicensed assistant.

342.     After the electrical stimulation modality was rendered, D.J. would be seen by Dr. Weiner for the first time that visit.

343.     In that regard, D.J. testified in part, as follows:

Q.      [T]hey would put the hot pack and the electrodes on your lower
        back, is that correct?

A.      Yes.

Q.      Who would put those on your back?

A.      The nurse.

* * *

Q.      Were you in a private room when you were getting these electrodes placed on your back?

A.      Yes.

Q.      Was the door open or closed?

A.      Closed.

* * *

Q.      Were there any other doctors at the facility, aside from Doctor Weiner, following the January 8, 2015 accident?

A.      No.

See **Exhibit 20** at pp. 40:19-23, 41:1-6, and 48:2-5.

344.    The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), **before** he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

345.    This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

346.    Dr. Weiner's delegation of supportive modalities to unqualified staff on each visit, **before** he determined that the modalities were reasonable and necessary, is a violation of Massachusetts chiropractic regulations, policy, and the standard of care.

347.    Defendants misrepresented in the submission of records and invoices that Dr. Weiner rendered the electrical stimulation services and application of hot packs to D.J.

348.    Dr. Weiner's receptionists/assistants were not identified in any of the records or invoices submitted to GEICO.

349.     Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a violation of 233 Code of Mass. Regs. § 4.09(3)(d), and constitute a deviation from Massachusetts standards of practice and professional conduct.

350.     The amounts that Barron Chiropractic billed to GEICO with respect to D.J. overall, and specifically with respect to supervision of electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

351.     D.J. testified she did not miss time from work as a result of the January 8, 2015 loss.  See **Exhibit 20** at p. 10:15-18.

352.     Barron Chiropractic medical records from D.J.'s initial evaluation on January 21, 2015, indicate D.J. did miss time from work.

353.     D.J. purportedly treated at Barron Chiropractic for injuries relating to a prior motor vehicle accident from June 17, 2014 to September 23, 2014.

354.     D.J.'s Barron Chiropractic medical records from her initial evaluation on January 21, 2015, indicate D.J. was treated at Barron Chiropractic within the last year "for injures related to a MVA" and provides unspecified past medical history as "neck pain, headache, and mid back pain," omitting lower back pain.  See **Exhibit 16**.

355.     Barron Chiropractic failed to consider D.J.'s prior accident, injuries and treatment (which took place at Barron Chiropractic) when determining if D.J.'s injuries were causally related to the subject accident.

356.     Barron Chiropractic failed to adequately and accurately report D.J.'s **similar** previous alleged injuries purportedly sustained less than eight months prior to her January 21, 2015 initial evaluation.

357.    Barron Chiropractic's failure to document D.J.'s case history in medical records and bills submitted to GEICO is in violation of 233 Code of Mass. Regs. § 4.05(1), which requires a chiropractor "maintain a separate, adequate and accurate written clinical record for each patient."

358.    Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

**D.    Claimant: Y.S.;
GEICO Claim No.: 0502790800101031;
Date of Loss: October 5, 2014.**

359.    On October 5, 2014, Y.S. was reportedly involved in a motor vehicle accident.

360.    Y.S. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Mattapan clinic.

361.    Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to Y.S.

362.    These records and invoices were certified by Dr. Daly and Dr. Barron.

363.    Y.S. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

364.    GEICO investigated Barron Chiropractic's requests for payment, and Y.S. provided a sworn statement.

365.    Y.S. confirmed she was directed (by unlicensed and unqualified staff) to perform exercise therapy before seeing her treating chiropractor.  See **Exhibit 21** at pp. 63:3-5 and 67:2-17.

366.    In that regard, Y.S. testified in part, as follows:

Q.      [Do] you do exercises before you see the doctor?

A.      Yes.

See id. at p. 63:3-5.

367.    The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), **before** he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

368.    This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

369.    Barron Chiropractic submitted bills to GEICO indicating Dr. Barron or Dr. Daly rendered the direct (one-on-one) therapeutic exercise under CPT code 97110 during Y.S.'s treatment on the following dates: March 19, 2015; March 20, 2015; March 26, 2015; April 2, 2015; April 9, 2015; April 10, 2015; April 23, 2015; and April 30, 2015.  See exemplar invoices attached as **Exhibit 22**.

370.    Unqualified and unlicensed clinical staff administered therapeutic services to Y.S.

371.    As stated above, CPT code 97110 requires direct (one-on-one) contact with the treating provider during therapeutic exercise.

372.    Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a

violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

373.    Barron Chiropractic also submitted bills to GEICO indicating Dr. Barron purportedly performed a dynamic surface electromyography ("SEMG") on March 12, 2015, the same visit he performed Y.S.'s initial evaluation.  See id.

374.    Dr. Barron purportedly performed a SEMG to "verify low back spasms/back pain and to quantify myofascial dysfunction and specific movements that may cause muscle dysfunction."  See id.

375.    Barron Chiropractic charged GEICO two hundred dollars ($200) for the performance of a SEMG (under CPT code 96002) and fifty dollars ($50) for Dr. Barron's review of the SEMG results (under CPT code 96004).  See id.

376.    In 2001, the MBoRC declared the use of advanced technologies, such as dynamic surface electromyography, "clinically unnecessary if: (a) such procedures are being used during the initial trial phase of a condition, and (b) the relevant information available from these tests could typically be determined through standard testing procedure(s)."  See MBoRC Policy Guidelines Regarding the Use of Advanced Technology in a Chiropractic Office, July 12, 2001, attached as **Exhibit 23** at § 9, incorporated in its entirety.

377.    The MBoRC recognizes the following as appropriate testing procedures: "palpation; neurological, orthopedic, vascular, and/or musculoskeletal studies or tests; radiographic imaging; and inspection of all available diagnostic studies that the patient had previously undertaken."  See id. at § 4.

378.    Barron Chiropractic improperly billed GEICO for SEMG since the advanced technology was not clinically necessary as Dr. Barron performed the SEMG during Y.S.'s

initial evaluation and the information obtained from the SEMG could be determined from a standard testing procedure (palpitation).  See id. at § 5.

379.   As a result of the aforementioned, Barron Chiropractic's submission for payment in this claim was denied.

380.   In a September 30, 2015 rebuttal letter, Dr. Barron distinguished between therapeutic exercises Y.S. performed in the treatment room with her treating chiropractor and those therapeutic exercises performed in the facility's downstairs physical therapy area. See **Exhibit 9**.

381.   Dr. Barron further stated "the code 97110 does not apply to only exercise that are performed downstairs [at Be Pain Free] in the physical therapy area but also therapeutic activities performed in the treatment room with the doctor."  Id.

382.   Barron Chiropractic medical records and invoices do not report that Y.S. performed therapeutic exercises at Be Pain Free.

383.   On information and belief, an unlicensed PT Aide supervised therapeutic exercises to Y.S. at Be Pain Free.

384.   On information and belief, the services rendered at Be Pain Free to Y.S. were documented as if the treatment was rendered at Barron Chiropractic.

385.   Barron Chiropractic medical records and invoices submitted to GEICO indicate Y.S. purportedly received therapeutic exercise on eleven (11) occasions.  See exemplar invoices attached as **Exhibit 22**.

386.   According to Barron Chiropractic medical records from Y.S.'s initial evaluation on March 12, 2015, specific exercises to be performed by Y.S. during her treatment were selected on an "Exercise Form."  See id.

387.    The "Exercise Form" contained in Y.S.'s Barron Chiropractic medical record from her March 12, 2015 visit is illegible.  See id.

388.    For each visit Y.S. purportedly received therapeutic exercises, Barron Chiropractic medical record provides the following: "The patient performed 30 minutes of therapeutic exercises today and followed the therapeutic exercise protocol given.  (CPT-97110)."  Id.

389.    Y.S.'s Barron Chiropractic medical records fail to adequately and accurately identify those therapeutic exercises that were purportedly performed in the presence of Y.S.'s treating chiropractor from those purportedly performed downstairs in the physical therapy area [Be Pain Free].

390.    Y.S.'s Barron Chiropractic medical records are boilerplate, cut-and paste, vague, and thus, fail to substantiate or justify the bills submitted by Barron Chiropractic for these services.

391.    The amounts that Barron Chiropractic billed to GEICO with respect to Y.S. overall, and specifically with respect to supervision of therapeutic exercises by an unidentified and unlicensed assistant, are set forth in **Exhibit 3A** filed herewith.

392.    Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

> **E.      Claimant: S.L.;**
> **GEICO Claim No.: 0525035630101014;**
> **Date of Loss: April 7, 2015.**

393.    On April 7, 2015, S.L. was reportedly involved in a motor vehicle accident.

394.     Claimant S.L. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Mattapan clinic.

395.     Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to S.L.

396.     These records and invoices were certified by Dr. Daly, Dr. Barron, and Dr. Weiner.

397.     S.L. was prescribed a pre-determined course of services that was devoid of individualized medical based decision-making.

398.     GEICO investigated Barron Chiropractic's requests for payment, and S.L. provided a sworn statement.

399.     S.L. testified that she was examined and treated exclusively by Dr. Weiner on her first date of treatment, April 21, 2015, which is confirmed by chiropractic records and invoices submitted by Barron Chiropractic to GEICO.  See **Exhibit 24** at p. 66:8-20; see also **Exhibit 25**.

400.     Barron Chiropractic, however, not only submitted records and invoices for the services purportedly rendered by Dr. Weiner (on S.L.'s first date of treatment), but also submitted records and invoices to GEICO for duplicative services purportedly rendered by Dr. Daly to S.L. on the exact same date of treatment.   See **Exhibit 25**.

401.     S.L. further confirmed, under oath, that she was only seen, treated and examined by Dr. Weiner on her first date of service.  Dr. Daly's records and invoices were fabricated, with the sole intent to drive up costs.

402.    In response to GEICO's denial, Barron Chiropractic sent a letter to GEICO, dated November 18, 2015, written by Barron Chiropractic's office manager, W.M. See **Exhibit 26**.

403.    In the November 18, 2015 letter, Barron Chiropractic's office manager stated "there was an error on the 4/21/15 bill that has since been corrected."  See id.

404.    Baron Chiropractic's office manager failed to identify which, if any, of the licensed employees at Barron Chiropractic reviewed, identified or altered the erroneous records.

405.    Based on information and belief, Baron Chiropractic's office manager is not licensed in any healing art in the Commonwealth of Massachusetts, and therefore is not qualified to modify or alter medical records or invoices in connection to treatment or services rendered to Barron Chiropractic patients.

406.    On information and belief, Barron Chiropractic generated fraudulent invoices and records for services that were not rendered to S.L. and other GEICO-insured patients.

407.    S.L. also reported that over the course of her treatment she met with a chiropractor only after receiving electrical stimulation and hot pack services, which were administered by various unlicensed receptionists/assistants.

408.    In that regard, S.L. testified in part, as follows:

Q.    [W]ho set you up on the [electric stimulation] machine, is it the doctor or is it somebody that works the front desk?

A.    The ladies.

Q.    And then when that's over with, did you meet with the doctor?

A.    Yes.

See **Exhibit 24** at p. 55:13-19.

409.   S.L. testified to being directed to perform therapeutic exercises in the basement of the Barron Chiropractic Mattapan clinic, which is the Be Pain Free facility.

410.   S.L. identified Kendall Mills ("Mills") as the staff member who rendered therapeutic exercises in the basement of Barron Chiropractic.  See **Exhibit 24** at p. 70:12-18; see also EUO Exhibit 7.

411.   In that regard, S.L. testified in part, as follows:

A.   Yes.  They took me downstairs to the exercise room.

\* \* \*

Q.   Did one of the doctors that treated you upstairs ever show you how to do the exercises?

A.   The guy showed me how to do it.

Q.   The guy that you said was downstairs?

A.   Um-hmm.

\* \* \*

Q.   And after you completed the exercises, would you then go back upstairs to meet with one of the doctors?

A.   Yes.

See **Exhibit 24** at pp. 60:2-3, 61:13-17, and 71:22-24; see also EUO Exhibit 7 thereto.

412.   Barron Chiropractic misrepresented in the submission of records and invoices to GEICO that Dr. Weiner actually rendered the therapeutic exercises and electrical stimulation services and application of hot packs to S.L.

413.   Mr. Mills renders and/or administers therapeutic procedures at both Be Pain Free and Barron Chiropractic.  See **Exhibit 27A**; see also **Exhibit 8E**.

414.   Mr. Mills is a chiropractic assistant when he works with patients treating at Barron Chiropractic and a PT Aide when he works with patients treating at Be Pain Free.

415.     Mr. Mills is not licensed in any healing art in the Commonwealth of Massachusetts, and therefore is not qualified to render therapeutic exercises.  See **Exhibit 27B**.

416.     A chiropractic assistant is not qualified or licensed to render therapeutic exercises pursuant to 233 Code of Mass. Regs. § 4.02(3) and MBoRC Policy Guideline No. 09-002.

417.     A PT Aide is not qualified or licensed to render therapeutic procedures pursuant to 259 Code of Mass. Regs. § 5.02(a).

418.     On information and belief, at all times relevant, Defendants and/or other employees of Barron Chiropractic directed Mr. Mills to practice as a physical therapist assistant without a license or without proper direct supervision, in violation of 259 Code of Mass. Regs. § 5.02 *et seq.* and Mass. Gen. Laws c. 112, § 23P.

419.     At all times relevant, Defendants and/or other employees of Barron Chiropractic created false medical records and invoices omitting Mr. Mills' name, and reported therapeutic procedures billed under CPT code 97110 were completed by the treating chiropractor.

420.     By billing GEICO for therapeutic procedures rendered by Mr. Mills, Barron Chiropractic billed GEICO for treatment not rendered as represented.

421.     Barron Chiropractic's office manager's November 18, 2015 letter confirmed Mr. Mills and another staff member rendered modalities and therapeutic procedures to S.L. See **Exhibit 26**.

422.     The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), **before** he determined that the

modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit." (Emphasis added).

423. This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

424. Furthermore, Defendants misrepresented in the submission of records and invoices to GEICO that the treating chiropractor rendered electrical stimulation and therapeutic exercises.

425. Defendants' documentation, *viz* the "Exercise Form" contained in S.L.'s Barron Chiropractic medical record from her May 19, 2015 visit, cannot justify invoices for therapeutic exercises because they are illegible. See **Exhibit 25**.

426. During each visit for which S.L. purportedly received therapeutic exercise, Barron Chiropractic medical records provides the following: "The patient performed 30 minutes of therapeutic exercises today and followed the therapeutic exercise protocol given. (CPT-97110)." See exemplar medical records attached as **Exhibit 25**.

427. S.L.'s Barron Chiropractic medical records pertaining to therapeutic exercise fail to adequately and accurately identify specific therapeutic exercises performed during S.L.'s treatment in violation of 233 Code of Mass. Regs. § 4.05(1).

428. Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a

violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

429.    The amounts that Barron Chiropractic billed to GEICO with respect to S.L. overall, and specifically with respect to supervision of therapeutic exercises and electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

430.    Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

**F.     Claimant: S.S.;
GEICO Claim No.: 0380267880101055;
Date of Loss: January 24, 2015.**

431.    On January 24, 2015, S.S. was reportedly involved in a motor vehicle accident.

432.    S.S. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Mattapan clinic and Be Pain Free.

433.    Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to S.S.

434.    These records and invoices were certified by Dr. Daly, Dr. Barron, and Dr. Weiner.

435.    S.S. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

436.    GEICO investigated Barron Chiropractic's and Be Pain Free's requests for payment, and S.S. provided a sworn statement.

437.    S.S. testified to treating at Be Pain Free prior to being referred directly to Barron Chiropractic.

438.    In that regard, S.S. testified in part, as follows:

A.    I think it's April.  I start with traction.  Yeah, they send me to traction.  They say, "Oh, if your back is still hurting you, so you have to see Dr. Barron."

See **Exhibit 28** at p. 33:3-6.

439.    On April 30, 2015, S.S. was **referred** from Be Pain Free to chiropractic care at Barron Chiropractic.  See **Exhibit 29**.

440.    Be Pain Free failed to document that S.S.'s condition was outside the scope of the physical therapist's "knowledge, experience or expertise," or document that S.S.'s care was outside the scope of physical therapy, which is a violation of the APTA code of professional conduct as adopted by 251 Code of Mass. Regs. § 5.05(1).

441.    As discussed *supra*, the referral of S.S. from Be Pain Free to Barron Chiropractic was in furtherance of an unprofessional and unlawful reciprocal referral relationship, which violated 233 Code of Mass. Regs. § 4.12(1).

442.    The April 30, 2015 Barron Chiropractic Initial Evaluation, wrongly reports the date of the loss as January 27, 2015, and notes S.S. was **referred** to Barron Chiropractic.  See **Exhibit 30**.

443.    The April 30, 2015 Be Pain Free medical record reports that S.S. rated her lumbar back pain as five on a scale of one to ten.  On the same day, the Barron Chiropractic Initial Evaluation records inconsistently report S.S. rated her lumber back pain as a seven on a scale of one to ten.  See **Exhibit 29**; see also **Exhibit 30**.

444.    Barron Chiropractic's records are inadequate and inaccurate in violation of 233 Code of Mass. Regs. § 4.05(1).

445.     S.S. testified she received spinal decompression (intersegmental traction) at Barron Chiropractic, which was administered by staff, prior to meeting with her treating chiropractor.  See **Exhibit 28** at pp. 45:7-46:8.

446.     The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), before he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

447.     This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

448.     The spinal decompression (intersegmental traction) treatment was billed to GEICO by Barron Chiropractic under CPT code 97012.  See exemplar invoices attached as **Exhibit 30**.

449.     Barron Chiropractic advertised this service as "free" to new patients.

450.     Barron Chiropractic, however, did not provide spinal decompression (intersegmental traction) to S.S. for free.  Instead, GEICO was charged seventy-five dollars ($75) for this service on nine (9) occasions.  See id.

451.     Engaging in advertising that is false, deceptive, misleading and/or unfair is a violation of 233 Code of Mass. Regs. § 4.13(1) and is a deviation from Massachusetts chiropractic principles.

452.    The amounts that Barron Chiropractic billed to GEICO with respect to S.S. overall, and specifically with respect to spinal decompression, are set forth in **Exhibit 3A**, filed herewith.

453.    Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

    G.    **Claimant: L.L.;**
          **GEICO Claim No.: 0432475500101037;**
          **Date of Loss: October 23, 2014.**

454.    On October 23, 2014, L.L. was reportedly involved in a motor vehicle accident.

455.    L.L. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

456.    Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to L.L.

457.    These records and invoices were certified by Dr. Barron and Dr. Farrell.

458.    L.L. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

459.    GEICO investigated Barron Chiropractic's requests for payment, and L.L. provided a sworn statement.

460.    L.L. testified a female staff member administered electrical stimulation before she was seen by her treating chiropractor.  See **Exhibit 31** at pp. 61:14-23 and 62:24-63:6.

461.    In that regard, L.L. testified in part, as follows:

    A.    They would put these little things that would give like shock.

> Q.     Okay.  And was it a doctor that applied that or was it somebody else that worked at the office?
>
> A.     Somebody else.  And the doctor, afterwards I would go see him.

See id. at p. 61:15-21.

462.     The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), **before** he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

463.     This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

464.     L.L. also testified a female staff member demonstrated and subsequently supervised L.L. during exercise therapy.  See id. at pp. 64:15-65:8.

465.     In that regard, L.L. testified in part, as follows:

> Q.     When [treatment] was reduced from three times a week to two times a week was that machine that did the shocks eliminated and replaced with exercises?
>
> A.     Yes.
>
> Q.     And did anybody show you how to do the exercises?
>
> A.     Yes.
>
> Q.     Okay.  Who showed you how to do the exercises?
>
> A.     One of those girls
>
> Q.     Did the doctor ever show you how to do the exercises?
>
> A.     No.

* * *

Q.     And when you're doing the exercises does one of the girls watch you doing the exercises the entire time?

A.     No.  The first time, yes, they did.  And just the other day they also stayed, but not all the time.

See id. at pp. 64:15-65:1 and 66:17-67:1.

466.     Barron Chiropractic submitted bills to GEICO falsely and deceptively representing that Dr. Farrell and/or Dr. Barron rendered direct (one-on-one) therapeutic exercise under CPT code 97110 during L.L.'s treatment on the following dates: June 26, 2015; July 8, 2015; July 17, 2015; July 24, 2015; August 10, 2015; August 12, 2015; August 26, 2015; and August 28, 2015.  See exemplar invoices attached as **Exhibit 32**.

467.     Dr. Farrell and Dr. Barron failed to render and/or administer therapeutic exercises to this patient.

468.     L.L. was not supervised when she performed therapeutic exercises at Barron Chiropractic.

469.     CPT code 97110 requires direct (one-on-one) contact with the treating provider during therapeutic exercise.

470.     Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

471.     The chiropractic records from Barron Chiropractic also contain the unexplained initials E.S. and G.P. at various points, specifically at the end of sentences purportedly describing treatment rendered to L.L. each day.   See exemplar medical records and invoices attached as **Exhibit 32**.

472.    Barron Chiropractic has represented in subsequent correspondence to GEICO that E.S. is a reference to Emy Sulatana ("Ms. Sultana") and G.P. is a reference to Ms. Peixoto since submitting L.L.'s records and invoices to GEICO.  See **Exhibit 8A**.

473.    Barron Chiropractic has also admitted that these two (2) individuals actually rendered L.L.'s treatment.

474.    In training records provided to GEICO, Ms. Sultana and Ms. Peixoto were only trained at Barron Chiropractic for <u>one</u> single day to administer/render therapeutic exercises.  See **Exhibit 8B**; see also **Exhibit 8C**.

475.    Ms. Sultana and Ms. Peixoto are not "qualified health care professionals" for the purposes of rendering therapeutic services as required by CPT code 97110.  Ms. Sultana and Ms. Peixoto are unlicensed clinical staff.

476.    In the event Ms. Sultana and Ms. Peixoto were lawfully allowed to administer therapeutic exercises, the records purportedly documenting the services administered by Ms. Sultana, Ms. Peixoto, and Dr. Farrell, are boilerplate, cut-and paste, vague, and thus, fail to substantiate or justify the bills submitted by Barron Chiropractic for these services.

477.    The amounts that Barron Chiropractic billed to GEICO with respect to L.L. overall, and specifically with respect to supervision of therapeutic exercises and electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

478.    Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

H.      **Claimant: M.F.;**
**GEICO Claim No.: 0525821350101015;**
**Date of Loss: June 15, 2015.**

479.     On June 15, 2015, M.F. was reportedly involved in a motor vehicle accident.

480.     Claimant M.F. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

481.     Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to M.F.

482.     These records and invoices were certified by Dr. Barron and Dr. Farrell.

483.     GEICO investigated Barron Chiropractic's requests for payment, and M.F. provided a sworn statement.

484.     Claimant M.F. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

485.     Claimant M.F. was directed to present for treatment three (3) times per week for three (3) weeks during her initial evaluation on June 24, 2015.

486.     M.F. testified that she was directed to perform therapeutic exercises under the supervision of a female staff member, while her chiropractor was not present.  See **Exhibit 33** at pp. 86:14-90:7.

487.     In that regard, claimant M.F. testified in part, as follows:

Q.     Would the doctor ... work with other patients while you were doing these exercises?

A.     Yes, but there's a young woman that's keeping track.

Q.     Who? Who is the young woman?

A.     She works in there.  I don't know her name, a white girl.

* * *

Q.     What is she doing exactly…?

A.     She's not doing anything.

See id. at pp. 86:24-87:7 and 88:20-22.

488.     Barron Chiropractic submitted bills to GEICO indicating Dr. Farrell rendered therapeutic exercise to M.F. for two fifteen (15) minute increments on the following dates: August 12, 2015; August 19, 2015; August 26, 2015; September 4, 2015; September 16, 2015; September 21, 2015; September 28, 2015; and October 2, 2015.  See exemplar invoices attached as **Exhibit 34**.

489.     After M.F.'s sworn statement revealed that Dr. Farrell did not render the therapeutic exercises to M.F., on October 9, 2015, Smith & Brink, P.C. requested the complete patient file of M.F. including the identity and credentials of the staff member that actually administered the therapeutic exercises to M.F. from Barron Chiropractic. See **Exhibit 35**.

490.     Barron Chiropractic represented that staff members, Ms. Sultana and Ms. Peixoto rendered the therapeutic exercises and were trained to do so.  See **Exhibit 8B**; see also **Exhibit 8C**.

491.     According to the purported training records provided by Barron Chiropractic Ms. Sultana and Ms. Peixoto were only trained at Barron Chiropractic for one single day to administer/render therapeutic exercises.  See **Exhibit 8B**; see also **Exhibit 8C**.

492.     M.F's records from Barron Chiropractic contain the initials "ES" and "GP" in her treatment records, specifically next to treatment purportedly rendered to M.F.  See exemplar medical records attached as **Exhibit 34**.

493.     Defendants now admit that the initials E.S. and G.P. are in reference to the treatment rendered by Ms. Sultana and Ms. Peixoto.

494.     According to Barron Chiropractic training records submitted to GEICO, Ms. Sultana and Ms. Peixoto are employed as chiropractic assistants.  See **Exhibit 8B**; see also **Exhibit 8C**.

495.     According to public records, neither Ms. Sultana, nor Ms. Peixoto is licensed in any healing art in the Commonwealth of Massachusetts.

496.     In the event Ms. Sultana and Ms. Peixoto were lawfully allowed to administer therapeutic exercises, the records purportedly documenting the services administered by E.S. (and B.F.), are boilerplate, cut-and paste, vague, and thus, fail to substantiate or justify the bills submitted by Barron Chiropractic for these services.

497.     Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

498.     The amounts that Barron Chiropractic billed to GEICO with respect to M.F. overall, and, specifically with respect to supervision of therapeutic exercise by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

499.     Despite the fact that Defendants knew that the above referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

         **I.**       **Claimant: T.V.;**
                    **GEICO Claim No.: 0537437870101017;**
                    **Date of Loss: July 2, 2015.**

500.     On July 2, 2015, T.V. was reportedly involved in a motor vehicle accident.

501.    T.V. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

502.    Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to T.V.

503.    These records and invoices were certified by Dr. Farrell.

504.    GEICO investigated Barron Chiropractic's requests for payment, and T.V. provided a sworn statement with the assistance of a Vietnamese interpreter.

505.    T.V. testified that Vietnamese is his first language and that he understands and speaks very little English.  See **Exhibit 36** at p. 6:3-4.

506.    In that regard, with the assistance of an interpreter, T.V. testified in part, as follows:

> Q.    Are you aware of any staff members at Barron Chiropractic in Malden that can speak Vietnamese?
>
> A.    No Vietnamese staff there, just English.

See id. at pp. 43:16-20.

507.    Barron Chiropractic records submitted to GEICO in support of invoices contain several subjective statements.  Examples of subjective statements found in Barron Chiropractic records (following the alleged January 9, 2013 accident) are provided below, followed by the date of treatment:

- "He stated: 'Patient notes he feels wors[e] today as the inflammation kicks in. He notes that he has been using the ice pack as directed.'" (January 10, 2013);

- "He stated: 'Patient went to the ER on Saturday due to the pain and numbness. They scanned him with 2 machines and gave him a neck collar with ice packs for home use. He did set up an appointment with his PCP today'" (January 14, 2013);

- "He stated: 'Patient feeling a little better after seeing the PCP he received some meds and he feels the right side is doing a little better overall'" (January 16, 2013);

- "He stated: 'Patient notes the left hand feels the same but the right hand is improving along with the neck area and left shoulder blade'" (January 21, 2013);

- "He stated: 'Patient of this point time he wakes up from sleep due to the numbness and tingling on his hands greater on the left versus the right. Ongoing left shoulder aches worse with movement'" (January 23, 2013);

- "He stated: 'Patient notes numbness down the left hand but the shoulder is feeling better'" (January 25, 2013);

- "He stated: 'Hand pain is the same but neck is better he is still waiting for the specialist appointment on 1/30/2013'" (January 28, 2013);

- "He stated: 'Feeling better but hand still gowes [sic] numb when he sleeps'" (January 30, 2013);

- "[T.V.] provided the following information regarding the particulars of the incident. He was in the parking lot of Tedesci Market when he [was] getting ready to drive forward to park when he was side swiped by a [vehicle] that was driving in reverse. He saw the car coming at the last moment, he beep the horn as the car sped up in reverse and struck his car." (February 1, 2013);

- "He stated: 'Still getting numbness down the left side but neck is feeling a little better but still hurts when sleeping on his back'" (February 4, 2013); and

- "He stated: 'Patient saw specialist the other week and scheduled to have an injection to the neck this month. Hasn't been in because of the snow and a cold, (NEMO)'" (February 19, 2013).

See exemplar medical records attached as **Exhibit 37A**.

508.    Examples of additional subjective statements Barron Chiropractic asserts were made by T.V. found in his Barron Chiropractic records (following the alleged July 2, 2015 accident) are provided below, followed by the date of treatment:

- "He reports the use of caffeine. The patient states that he is a former smoker." (July 13, 2015);

- "[T.V.] stated: 'Numbness in both arms woke me up last night. Back and neck pain are a little better.'" (July 15, 2015);

- "[T.V.] stated: 'Arm numbness woke me up again.'" (July 17, 2015);

- "[T.V.] stated: 'I have mild headache in the front. Early this morning I vomited." (July 22, 2015);

- "[T.V.] stated: 'Numbness is arms did not wake me.'" (July 24, 2015);

- "[T.V.] stated: 'Numbness in my arms did not wake me last night.'" (July 27, 2015);

- "[T.V.] stated: 'My left arm feels tired.'" (July 29, 2015);

- "[T.V.] stated: 'I have numbness in both hands and pain in the left wrist. Both [sic] arms feel weak.'" (July 31, 2015);

- "His back feels weak. There is chronic left foot pain form an old injury that keeps him from walking much.  Neck pain is mild to moderate with headaches three times a week that last about 15 minutes.  His left arm feels weak and numbness occurs during the day or night that feels like it did before the accident of 7/2/2015." (August 3, 2015);

- "[T.V.] stated: 'My left arm feels a lot better.'" (August 24, 2015);

- "[T.V.] stated: 'Both hands are still numb. My doctor says an operation won't help.'" (August 31, 2015); and

- "[T.V.] provided the following information regarding the particulars of the incident. He no longer has neck or back pain. There is ongoing bilateral arm and hand numbness and weakness that was pre-existing and similar to his pre-accident condition." (September 14, 2015).

See exemplar medical records attached as **Exhibit 37B**.

509.    T.V. was prescribed a pre-determined treatment regime devoid of

individualized medical based decision-making.

510.    T.V. was directed to present for treatment three (3) times per week for three

(3) weeks during his initial evaluation on July 13, 2015.

511.    As part of his treatment, T.V. was directed to perform exercise therapy during

his treatment at Barron Chiropractic.

512.    In that regard, T.V. testified in part, as follows:

Q.    Does the doctor stay with you while you are doing the exercises or does he leave the room?

A.    The first day the doctor stayed with me to show me how to do it and after that he is not there.

Q.    Okay.  Where would he go?

A.    He would treat other people.

See **Exhibit 36** at p. 48:13-20.

513.    Barron Chiropractic submitted bills to GEICO indicating Dr. Farrell rendered

therapeutic exercise to T.V. under CPT code 97110 on following dates: August 10, 2015;

August 14, 2015; August 17, 2015; August 21, 2015; August 24, 2015; August 28, 2015; August 31, 2015; September 4, 2015; and September 11, 2015.  See exemplar invoices attached as **Exhibit 37B**.

514.     According to 233 Code of Mass. Regs. § 4.09(3)(d), improper charges are "charges for treatments, procedures or services which were not rendered, were not fully rendered, or were not rendered as represented by the charging chiropractor."

515.     T.V. further testified he selected Barron Chiropractic because he previously treated at Barron Chiropractic in 2013 following a motor vehicle accident.  See **Exhibit 36** at p. 40:14-17.

516.     Barron Chiropractic billed GEICO for T.V.'s initial examination as a new patient under CPT code 99203.  See **Exhibit 37B**.

517.     On October 27, 2015, Smith & Brink, P.C. sent correspondence to Barron Chiropractic requesting the complete patient file of claimant T.V., as well as the identity and qualifications of the individual(s) who actually sat with T.V. while T.V. completed the exercises with little to no direction.  See **Exhibit 38A**.

518.     In response, Dr. Barron sent a letter to GEICO, dated November 10, 2015, admitting that T.V. was, in fact, an established patient who they billed as a new patient. See **Exhibit 38B**.

519.     According to the purported training records subsequently provided by Barron Chiropractic, since GEICO informed Barron Chiropractic that it had learned of Barron Chiropractic's misrepresentations (throughout T.V.'s records), Barron Chiropractic admitted that Ms. Sultana and Ms. Peixoto actually administered therapeutic exercise to T.V. at Barron Chiropractic.  See **Exhibit 8A-C**; see also **Exhibit 37B**.

520.     As stated *supra*, Ms. Sultana and Ms. Peixoto were only trained for <u>one</u> single day to administer/render therapeutic exercises at Barron Chiropractic.

521.     On information and belief, Ms. Sultana and Ms. Peixoto are not "qualified health care professionals" for the purposes of rendering therapeutic services as required by CPT code 97110.

522.     In the event Ms. Sultana and Ms. Peixoto were lawfully allowed to administer therapeutic exercises, the records purportedly documenting the services administered by Ms. Sultana, Ms. Peixoto, and Dr. Farrell, are boilerplate, cut-and paste, vague, and thus, fail to substantiate or justify the bills submitted by Barron Chiropractic for these services.

523.     The amounts that Barron Chiropractic billed to GEICO with respect to T.V. overall, and, specifically with respect to supervision of therapeutic exercise by unidentified and unlicensed staff, are set forth in **<u>Exhibit 3A</u>** filed herewith.

524.     Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

> **J.     <u>Claimant: A.T.;</u>**
> **<u>GEICO Claim No.: 0537437870101017;</u>**
> **<u>Date of Loss: July 2, 2015.</u>**

525.     On July 2, 2015, A.T. was reportedly involved in a motor vehicle accident.

526.     A.T. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Malden clinic.

527.     Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to A.T.

528.     These records and invoices were certified by Dr. Farrell.

529.    GEICO investigated Barron Chiropractic's requests for payment, and A.T. provided a sworn statement with the assistance of a Vietnamese interpreter.

530.    A.T. testified that Vietnamese is her first language and that she understands and speaks very little English.  See **Exhibit 39** at p. 7:6-11.

531.    In that regard, with the assistance of an interpreter, A.T. testified in part, as follows:

> Q.    Are you able to speak and understand English?
>
> A.    No.
>
> Q.    Okay. Are you able to read English?
>
> A.    No.
>
> * * *
>
> Q.    Did the facility have anyone that could speak Vietnamese?
>
> A.    No Vietnamese speaker there. . . .
>
> * * *
>
> Q.    Okay, so on each visit that you would go to Barron Chiropractic would you see a doctor each time?
>
> A.    Correct.
>
> Q.    Would the doctor meet with you privately?
>
> A.    Yes.
>
> Q.    No one else was in the room?
>
> A.    Yes.
>
> Q.    And you would just point to the areas that were hurting?
>
> A.    Yes.
>
> Q.    Were you able to communicate with him any more than that?
>
> A.    No. . . .

See id. at pp. 7:6-8:5 and 40:7-41:8.

532.   Barron Chiropractic records contain several subjective statements it claims were made by A.T. throughout her treatment.  Examples of subjective statements contained in her Barron Chiropractic records are provided below, followed by the date of treatment:

- "Patient describes the feeling associates with this complaint as aching and throbbing on the right side.  It becomes aggravated in the afternoon and is relieved by lying down and medications." (July 13, 2015);

- "Sleeping – she describes as moderately disturbed for up to 2-3 hours due to neck pain." (July 13, 2015);

- "[A.T.] stated: 'LBP is worse and is going down to the left calf.  My left foot has hurt since before the accident when I twisted and fell.'" (July 17, 2015);

- "[A.T.] stated: 'After the last treatment my low back felt good. My neck hurts on the right and goes down the arm feeling tight.'" (July 20, 2015);

- "[A.T.] stated: 'In the morning mid back pain is worse as is the right shoulder.  LBP is improving.'" (July 24, 2015);

- "[A.T.] stated: 'Pain going down my left thigh to the knee is getting worse.  My family doctor referred me to an orthopedist.  My left ankle is swollen.  Neck pain radiates to the right shoulder and the arm twitches at night.  I stopped going for walks and the stairs are difficult.'" (August 10, 2015); and

- "[A.T.] stated: 'I went to the ER last week because of left hip and thigh pain.  They want to do another mri.   My neck and mid back are much better.'" (August 17, 2015).

See exemplar medical records attached as **Exhibit 40**.

533.   A.T. was prescribed a pre-determined treatment regime devoid of individualized medical based decision-making.

534.   A.T. was directed to present for treatment three (3) times per week for three (3) weeks during her initial evaluation on July 13, 2015.

535.   In subsequent correspondence, Barron Chiropractic confirmed that Ms. Sultana administered therapeutic exercise to A.T. at Barron Chiropractic.  See **Exhibit 8A**; see also **Exhibit 40**.

536.     Ms. Sultana was not identified in any of A.T.'s records as having administered therapeutic exercises to A.T.

537.     According to the training records provided by Barron Chiropractic, Ms. Sultana only trained at Barron Chiropractic for <u>one</u> single day to administer/render therapeutic exercises.  See **Exhibit 8B**.

538.      According to public records, Ms. Sultana is not licensed in any healing art in the Commonwealth of Massachusetts.

539.     Ms. Sultana is not a "qualified health care professional" for the purposes of rendering therapeutic services as required by CPT code 97110.

540.     In the event Ms. Sultana was lawfully allowed to administer therapeutic exercises, the records purportedly documenting the services administered by Ms. Sultana and Dr. Farrell, are boilerplate, cut-and paste, vague, and thus, fail to substantiate or justify the bills submitted by Barron Chiropractic for these services.

541.     The amounts that Barron Chiropractic billed to GEICO with respect to A.T. overall, and, specifically, with respect to supervision of therapeutic exercise by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

542.     Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

**K.     Claimant: J.S.;**
**GEICO Claim No.: 0516050280101017;**
**Date of Loss: May 30, 2015.**

543.     On May 30, 2015, J.S. was reportedly involved in a motor vehicle accident.

544.    J.S. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Mattapan clinic.

545.    Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to J.S.

546.    These records and invoices were certified by Dr. Daly, Dr. Barron, and Dr. Weiner.

547.    GEICO investigated Barron Chiropractic's requests for payment, and J.S. provided a sworn statement.

548.    While J.S. could not recall the name of her treating chiropractor at Barron Chiropractic, J.S. was able to describe him, noting that he was as spectacled Caucasian man. See **Exhibit 41** at pp. 108:17-109:04.

549.    J.S. was also able to confirm that the spectacled chiropractor was the <u>one and only</u> chiropractor at Barron Chiropractor to examine and/or provide her with treatment and services.

550.    J.S. testified in part, as follows:

        Q.     [W]as it always the same doctor?
        A.     Yes.
        Q.     Okay.  It was always this gentleman with the glasses?
        A.     Yes.

See <u>id.</u> at pp. 118:18-119:02.

551.    Barron Chiropractic submitted records and bills to GEICO seeking compensation for treatment and services (purportedly rendered to J.S.) by the following three (3) chiropractors: Dr. Daly, Dr. Barron, and Dr. Weiner.  See exemplar invoices attached as **Exhibit 42**.

552.    On information and belief, J.S. was not treated by Dr. Daly and Dr. Barron.

553.    Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

554.    J.S. also confirmed that over the course of her treatment at Barron Chiropractic, the application of heat pads and electrical stimulation services were not actually rendered by her treating chiropractor, despite the representations in her records and invoices otherwise.  See **Exhibit 41** at pp. 120:3-5, 121:7-15, and 122:8-24.

555.    Issuing charges for treatments, procedures or services which were not rendered, were not fully rendered, or were not rendered as represented by the charging chiropractor are improper, unfair, and unprofessional acts within the meaning of 233 Code of Mass. Regs. § 4.09(3)(d).

556.    The amounts that Barron Chiropractic billed to GEICO with respect to J.S. overall, and specifically with respect to electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

557.    Despite the fact that Defendants knew that the above-referenced conduct violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

**L.      Claimant: T.T.V.;
          GEICO Claim No.: 0453525940101056;
          Date of Loss: August 24, 2015.**

558.    On August 24, 2015, T.T.V. was reportedly involved in a motor vehicle accident.

559.   T.T.V. subsequently applied for PIP benefits from GEICO in connection with the services purportedly rendered at Barron Chiropractic's Mattapan clinic.

560.   Barron Chiropractic subsequently submitted records and invoices to GEICO seeking payment for services purportedly rendered to T.T.V.

561.   The medical records and invoices were certified by Dr. Daly and Dr. Weiner.

562.   GEICO investigated Barron Chiropractic's requests for payment, and T.T.V. provided a sworn statement.

563.   T.T.V. testified he went to Barron Chiropractic's Mattapan clinic on two occasions.  See **Exhibit 43** at p. 31:8-10.

564.   T.T.V. testified that on the first day he presented at Barron Chiropractic he completed paperwork, spoke with an unidentified male with unknown qualifications whom T.T.V. thought was a doctor, but did not receive an evaluation or treatment.  See **Exhibit 43** at pp. 28:21-30:15, 38:14-39:6, 40:21-41:6; see also **Exhibit 2**.

565.   T.T.V. testified the second day he presented at Barron Chiropractic he underwent an evaluation and received treatment.  See **Exhibit 43** at pp. 30:10-15, 31:8-17, and 40:12-22.

566.   In that regard, T.T.V. testified in part, as follows:

Q.   Did you meet with a doctor that day, or a chiropractor that day?

A.   I believe I did meet with like, the -- maybe it was the chiropractor.

Q.   Ask you questions –

A.   And the doctor real quick, just -- just questions though, a million questions he was asking me.

* * *

Q.   Okay. When you were at Barron at first did someone do an evaluation on you? And by that, I mean did they physically touch the areas that were in pain, anything like that?

| | | |
|---|---|---|
| A. | No. | |
| Q. | Not that first day? | |
| A. | Not that day. | |

* * *

| | | |
|---|---|---|
| Q. | Okay. And let's see, did you do any treatment on that first day that you went to Barron Chiropractic? | |
| A. | No. | |

* * *

| | |
|---|---|
| A. | That was the second day. |

* * *

| | |
|---|---|
| Q. | So, you only went to the facility on two occasions? |
| A. | Yes. |
| Q. | Okay. And you said on the second day they gave you treatment? |
| A. | Yes. |
| Q. | And what type of treatment was that? |
| A. | They put the -- what do you call it, the electric stim, they like, I guess adjusted you, and then they gave me some -- they took some x-rays. |

See id. at pp. 28:21-30:15 and 31:8-17.

567. Barron Chiropractic submitted medical records and invoices to GEICO for purported treatment rendered to T.T.V. on August 28, 2015 and September 9, 2015.

568. The August 28, 2015 medical records and invoices submitted to GEICO seek reimbursement for an initial evaluation (CPT code 99203), X-Rays (CPT code 72100 and 72040), supplies (Sombra) (CPT code 99070), and durable medical equipment (back support) (CPT code L0625) purportedly rendered by Dr. Daly.  See invoices attached as **Exhibit 44**.

569. The September 1, 2015 medical records and invoices submitted to GEICO seek reimbursement for electrical stimulation (CPT code 97014), application of heat (CPT code 97010), and chiropractic manipulation (CPT code 98941) purportedly rendered by Dr. Weiner. See id.

- 84 -

570.    T.T.V. identified Dr. Daly as his <u>one and only</u> treating chiropractor at Barron Chiropractor.  See **Exhibit 43** at p. 37:1-13.

571.    On information and belief, T.T.V. was not treated by Dr. Weiner.

572.    T.T.V. also confirmed that during his one day of treatment at Barron Chiropractic, the application of heat pads and electrical stimulation services were not actually rendered by the treating chiropractor, despite the representations in the medical records and invoices otherwise.  See <u>id.</u> at pp. 39:7-40:11.

573.    T.T.V. would met with Dr. Daly *only after* receiving electrical stimulation by an unlicensed and unidentified staff member.

574.    The treating chiropractor's delegation of supportive modalities and therapeutic procedures to his receptionists/assistants (on each visit), before he determined that the modalities and therapeutic procedures were reasonable and necessary, is inconsistent with MBoRC Policy Guideline No. 09-002, which requires a patient to "be properly evaluated by the licensed chiropractor and a determination made that a supportive procedure or therapy is clinically indicated **before** any supportive procedure or therapy may be applied to the patient by an unlicensed assistant during the same patient visit."  (Emphasis added).

575.    This practice is expressly declared unprofessional by MBoRC Policy Guideline No. 09-002.

576.    Defendants then misrepresented in the submission of records and invoices to GEICO that it was Dr. Daly that exclusively rendered the electrical stimulation services and application of hot packs to T.T.V.  See **Exhibit 44**.

577.    Defendants disregard delegation of supportive modalities to unqualified staff on each visit, **before** a licensed chiropractor (or other qualified health care provider)

determined that the modalities were reasonable and necessary, was a violation of Massachusetts chiropractic regulations, policy, and the standard of care.

578.     Charges for treatment, procedures and services which are not rendered, not fully rendered, or not rendered as represented, by the charging chiropractor, are improper, a violation of 233 Code of Mass. Regs. § 4.09(3)(d), and a deviation from Massachusetts standards of practice and professional conduct.

579.     The amounts that Barron Chiropractic billed to GEICO with respect to T.T.V. overall, and with respect to electrical stimulation by unidentified and unlicensed staff, are set forth in **Exhibit 3A** filed herewith.

580.     Despite the fact that Defendants knew that the above-referenced conduct directly violates Massachusetts chiropractic regulations and is non-compensable, Defendants caused medical records and bills concerning this purported treatment to be submitted to GEICO for payment.

## VI.     DAMAGES

581.     As of the date of this Complaint, Defendants have submitted **$591,102.75** in bills to GEICO.

582.     GEICO, in good faith, paid **$421,861.27** in chiropractic bills to Barron Chiropractic before discovering Defendants fraud scheme.

583.     As a consequence of Defendants' pattern of fraudulent conduct, GEICO suffered damages, which include, but are not limited to, the monies detailed in the GEICO Damages Chart, which is attached hereto as **Exhibits 3A and B**, and is fully incorporated here.  The complete extent of GEICO's damages is known only to Defendants and, therefore, can only be ascertained through discovery.

584. Since Defendants' pattern of fraudulent conduct is ongoing, GEICO's damages are increasing with each day Defendants continue to operate their scheme. GEICO believes its true damages (including expenses and bodily injury payments) are significant and will exceed the amounts listed in **Exhibit 3A and B**.

## VII.    CAUSES OF ACTION

## COUNT I:  COMMON LAW FRAUD

585. GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

586. Defendants, Dr. Barron, Dr. Farrell, Dr. Weiner, and Barron Chiropractic intentionally made material misrepresentations to GEICO in connection with demands for payment.

587. Defendants' intentional misrepresentations include, but are not limited to, the following:  (a) creating and submitting false and fraudulent insurance claims; (b) participating in and/or causing the preparation and submission of fraudulent medical records, treatment notes and medical invoices regarding treatment that was never performed, not warranted and/or falsely documented; (c) intentionally misrepresenting the qualifications of persons involved in administrating chiropractic and medical services to patients; (d) the overutilization of treatment by prescribing a pre-determined treatment protocol devoid of individualized medical decision making; (e) engaging in improper reciprocal referrals; and (f) violations of the Massachusetts laws and regulations enacted for the protection of the public's health, safety, and welfare.

588. Defendants' representations are intentionally false, or intentionally omitted additional facts necessary to warrant the determination the information furnished was not misleading.  The misrepresentations were intentionally made by Defendants in furtherance of

their scheme to defraud GEICO by submitting non-compensable claims to GEICO for payment of first party insurance benefits under Massachusetts law.

589.    The foregoing misrepresentations were known by Defendants to be false, and were made for the express purpose of inducing GEICO to make payments for claims that were not compensable under Massachusetts law.

590.    GEICO reasonably relied on such material misrepresentations to its detriment in paying and investigating numerous unreasonable, unnecessary, inappropriate, and non-meritorious bills for medical expenses pursuant to PIP bodily injury claims.

591.    As a direct and proximate result of Defendants' fraudulent representations and acts, GEICO has been damaged as previously described herein.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

a.    Damages in an amount to be determined at trial representing the whole of GEICO's actual, consequential, and incidental damages, loss, detriment, and expense caused or occasioned by the actions of the Defendants;

b.    Costs, interest and attorneys' fees; and,

c.    Any additional relief this Court deems just.

## COUNT II:  CIVIL CONSPIRACY

592.    GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

593.    Defendants intentionally agreed, combined, confederated, contrived, and conspired with one another to assist Barron Chiropractic in defrauding GEICO.

594.    By joining in this conspiracy to defraud, Defendants were collectively able to negate the safeguards that would have prevented any one person acting alone, from accomplishing a fraud of this type and on this scale.

595.     As a consequence of the aforesaid conspiracy, GEICO was induced to and paid numerous fraudulent and non-compensable medical claims.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

a.      Damages in an amount to be determined at trial representing the whole of GEICO's actual, consequential, and incidental damages, loss, detriment, and expense caused or occasioned by the actions of the Defendants;

b.      Costs, interest and attorneys' fees; and,

c.      Any additional relief this Court deems just.

## COUNT III:  MONEY HAD AND RECEIVED

596.     GEICO realleges, re-pleads and incorporates by reference the allegations above as if fully set forth herein.

597.     Barron Chiropractic's intentional retention of amounts paid by GEICO is wrongful because these monies were obtained as the direct result of Defendants' violation of duties to its patients and its duties to comply with chiropractic regulations and policies.

598.     GEICO has been harmed by Barron Chiropractic's intentional acts of wrongfully obtaining and retaining these benefits because GEICO would not have paid Barron Chiropractic's bills if it had known, at the time it paid these claims, that Defendants' acts were wrongful and illegal.

599.     Barron Chiropractic's intentional retention of these benefits violates fundamental principles of contract, justice, equity, and good conscience.

600.     Additionally, Barron Chiropractic's intentional retention of the excess amounts received from GEICO due to Defendants' fraudulent treatment and billing practices is wrongful.

601.     Barron Chiropractic has been unjustly enriched, and to allow Barron

Chiropractic to retain these amounts would violate fundamental principles of justice, fairness,

equity, and good conscience.

**WHEREFORE**, GEICO respectfully requests that this Honorable Court award:

a.     Damages in an amount to be determined at trial representing the whole
of GEICO's actual, consequential, and incidental damages, loss,
detriment, and expense caused or occasioned by the actions of Barron
Chiropractic;

b.     Costs and interest; and,

c.     Any additional relief this Court deems just.

### COUNT IV:  VIOLATIONS OF MASSACHUSETTS GENERAL LAWS CHAPTER 93A

602.     GEICO realleges, re-pleads and incorporates by reference the allegations

above as if fully set forth herein.

603.     Section 2(a) of the Massachusetts Consumer Protection Act, Massachusetts

General Laws chapter 93A, provides, that "unfair methods of competition and/or unfair or

deceptive acts or practices in the conduct of any trade or commerce are hereby declared

unlawful."

604.     At all times relevant hereto, Defendants were engaged in trade or commerce

within the Commonwealth of Massachusetts.

605.     The conduct alleged throughout this Complaint was intentional and had a

center of gravity in the Commonwealth of Massachusetts, where the Barron Chiropractic

clinics are located.

606.     The acts and omissions of Defendants, in furtherance of their scheme to

defraud GEICO including, but not limited to, the conduct alleged above, constitute

intentionally unfair and deceptive business practices in trade or commerce, as prescribed by

Massachusetts General Laws chapter 93A, §§ 2 and 11, and those regulations promulgated

by the Office of the Attorney General for the Commonwealth of Massachusetts pursuant thereto.

607.     An act or practice is a violation of Massachusetts General Laws chapter 93A, § 2, if the act or practice fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.  940 Code of Mass. Regs. § 3.16.

608.     Defendants intentionally committed one or more per se violations of Massachusetts General Laws chapter 93A, §§ 2 and 11, by violating provisions of the Massachusetts's No-Fault PIP Statute (Mass. Gen. Laws c. 90, § 34M), the Massachusetts Public Health Statute (Mass. Gen. Laws c. 111) and Massachusetts regulations pertaining to chiropractors, which are codified in 233 Code of Mass. Regs. §§ 2.00-5.00.

609.     Barron Chiropractic, Dr. Barron, Dr. Farrell, and Dr. Weiner, and others, engaged in intentionally misleading conduct, and intentionally omitted information necessary to warrant the determination their statements were not misleading.

610.     Dr. Barron, Dr. Farrell, and Dr. Weiner, and others, intentionally allowed unqualified persons to render therapeutic exercises to GEICO-insured patients.

611.     Dr. Barron, Dr. Farrell, and Dr. Weiner, and others, intentionally prescribed treatment of uniform duration and frequency regardless of the true needs, if any, of GEICO-insured patients.

612.     Dr. Barron, Dr. Farrell, and Dr. Weiner, and others, intentionally engaged in unfair and deceptive conduct.

613.    Defendants' intentional unlawful conduct forced GEICO to incur attorneys'
fees.  Such fees constitute a loss of money or property, and are recoverable pursuant to
Massachusetts General Laws chapter 93A.

614.    As a result of the above-described deceptive business practices, GEICO
sustained injury and economic damages including, but not limited to:

      a.    All monies paid to Defendants, in reliance on false chiropractic bills;

      b.    The cost of investigating the underlying PIP claims; and,

      c.    The costs incurred in connection with this action (including all attorneys' fees, and costs).

615.    Defendants' actions described herein were performed
intentionally.  Accordingly, GEICO is entitled to treble damages, costs and attorneys' fees.

**WHEREFORE**, GEICO demands judgment against Defendants individually, and
jointly and severally, as follows:

      a.    Actual and consequential damages to be established at trial;

      b.    Treble damages, interest, costs and reasonable attorneys' fees;

      c.    Injunctive relief enjoining Defendants from engaging in the wrongful activities alleged in this Complaint and requiring them to disclaim all bills and demands for payment issued to GEICO-insured patients who reported that they were injured in a motor vehicle incident;

      d.    Costs and interest; and,

      e.    Any other relief this Court deems just.

## COUNT V:  BREACH OF CONTRACT

616.    GEICO realleges, re-pleads and incorporates by reference the allegations
above as if fully set forth herein.

617.    Defendants submitted bills to GEICO which remained unpaid for more than
thirty (30) days.

618.    By virtue of Mass. Gen. Laws c. 90, § 34M, where bills remain unpaid for more than thirty (30) days, Defendant, Barron Chiropractic, is made a statutory party to the respective automobile insurance contract.

619.    As a statutory party, Defendants step into the shoes of the insured and, therefore, are bound by conditions precedent in the insurance policy.

620.    Defendants had an obligation under the GEICO automobile policy, Massachusetts case law and Mass. Gen. Laws c. 90, § 34M to cooperate with GEICO in the investigation of any loss.

621.    Defendants' failure to cooperate with GEICO's investigation into Barron Chiropractic's claims constitutes a breach of contract.

622.    Furthermore, by participating in the filing of fictitious, false, and/or fraudulent automobile insurance claims, Defendants, breached the respective contracts of insurance with GEICO, as well as the covenants of good faith and fair dealing, which are implied, when not expressed, in every contract within the Commonwealth of Massachusetts.

623.    As a result of the breaches of contract by Defendants, GEICO's damages include, but are not limited to:

      a.    The monies paid for the fictitious claims;

      b.    The reimbursement for the fair and reasonable value of the labor and resources expended to detect and expose the policyholders' participation in the conspiracy to defraud GEICO; and,

      c.     Interest and costs allowable by law.

**WHEREFORE**, GEICO demands judgment against Defendants individually, jointly and severally as follows:

      a.    Actual and consequential damages to be established at trial;

      b.    Costs and interest; and,

      c.    Any other relief this Court deems just.

## COUNT VI:  INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

624.     GEICO realleges, re-pleads and incorporates by reference the allegations

above as if fully set forth herein.

625.     Defendants intentionally interfered with the advantageous business

relationships of GEICO, thereby causing it to suffer direct monetary losses and actual

damages.

626.     More specifically:

   a.     At all times material to this Complaint, GEICO enjoyed advantageous business relationships with its insureds;

   b.     Defendants had knowledge of these advantageous business relationships;

   c.     Defendants intentionally interfered with the above-referenced advantageous business relationships;

   d.     GEICO suffered a loss of business advantage as a direct result of Defendants' conduct; and

   e.     Defendants' interferences with GEICO's advantageous business relationships will likely continue in the future.

**WHEREFORE**, GEICO demands judgment against Defendants individually, and

jointly and severally as follows:

   a.     Actual and consequential damages to be established at trial;

   b.     Injunctive relief enjoining Defendants from engaging in the wrongful activities alleged in the Complaint and requiring them to disclaim all bills and demands for payment issued to GEICO-insured patients who reported that they were injured in a motor vehicle incident;

   c.     Costs and interest; and,

   d.     Any other relief this Court deems just.

### VIII.   JURY DEMAND

GEICO demands trial by jury on all counts in this Complaint.

Respectfully Submitted,

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO GENERAL
INSURANCE COMPANY, and GEICO
INDEMNITY COMPANY,
By their Attorneys,


*/s/ David O. Brink*
_____
David O. Brink, (BBO #547370)
   dbrink@smithbrink.com
Douglas D. McInnis, (BBO #672935)
   dmcinnis@smithbrink.com
Amanda J. Timperman, (BBO #664105)
   atimperman@smithbrink.com
SMITH & BRINK, P.C.
350 Granite Street, Suite 2303
Braintree, Massachusetts 02184
Ph.: (617) 770-2214
Fax: (617) 774-1714

Dated: April 1, 2016