UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., *et al*,     \* <br>     \* <br>     \* <br> Plaintiffs,     \* <br>     \* <br> v.     \* <br>     \* <br> BARRON CHIROPRACTIC & REHABILITATION, P.C., *et al.*,     \* <br>     \* <br>     \* <br> Defendants.     \* | Civil Action No. 1:16-cv-10642-ADB |

**<u>MEMORANDUM AND ORDER ON MOTIONS TO DISMISS</u>**

BURROUGHS, D.J.

On April 1, 2016, Plaintiffs Government Employees Insurance Company, GEICO General Insurance Company, and GEICO Indemnity Company (collectively, "GEICO") initiated this medical provider fraud action against Defendants Barron Chiropractic & Rehabilitation, Phillip C. Barron, Gilbert Weiner, and Brian Farrell (collectively, "Barron") under Massachusetts state law. [ECF No. 1]. The Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a)(1). Currently pending before the Court are Barron's (1) special motion to dismiss under the Massachusetts Strategic Litigation Against Public Participation ("Anti-SLAPP") statute, Mass. Gen. Laws ch. 231, § 59H [ECF No. 21] and (2) motion to dismiss for failure to state a claim [ECF No. 19]. GEICO opposes both motions [ECF Nos. 25, 26]. The parties also filed replies and sur-replies in connection with each motion. [ECF Nos. 31, 32, 35, 36]. For the reasons explained below, the special motion to dismiss pursuant to the Anti-SLAPP statute is <u>DENIED,</u> and the motion to dismiss for failure to state a claim is <u>GRANTED IN PART AND DENIED IN PART</u>.

## I.    ALLEGATIONS IN THE COMPLAINT

Given the length of the complaint (98 pages long, 500 pages with exhibits, and 626 paragraphs) [ECF No. 1 (hereinafter, "Compl.")], the following is a summary of only the most salient facts. In essence, GEICO alleges that Barron engaged in an exploitative scheme to induce GEICO to pay or settle false and/or inflated medical insurance claims. Compl. ¶ 43. The individual defendants are each employed as chiropractors at Defendant Company Barron Chiropractic & Rehabilitation ("the Barron chiropractors"). Id. ¶¶ 23, 26, 31.

Under the Massachusetts No-Fault Personal Injury Protection ("PIP") statute, auto insurers in Massachusetts must provide PIP coverage to their insureds. Id. ¶¶ 41–43. This coverage ensures that persons involved in automobile accidents have their medical expenses covered, regardless of who is liable for the accident. Id. ¶¶ 41–43. As an insurance company providing this mandatory coverage to its insureds, GEICO pays these PIP benefits directly to healthcare providers, such as Barron. Id. ¶¶ 41–43.

GEICO alleges that Barron took advantage of the PIP statutory framework by engaging in several different types of fraudulent behavior in an effort to obtain higher payments from GEICO. First, GEICO alleges that the Barron chiropractors consistently determined that every motor vehicle accident patient required chiropractic treatment, prescribed uniform treatments without regard to individual patients' needs, and used boilerplate protocols in order to maximize the amount of treatment rendered and the PIP benefits received from GEICO. Id. ¶¶ 64–67. These treatment protocols included certain types of in-office treatment (electrical stimulation and hot pack application) that GEICO asserts could and should have been prescribed as home treatment, which would not have been billable. Id. ¶¶ 72–77. The Barron chiropractors also purportedly only prescribed certain expensive treatments to patients with PIP benefits (like

GEICO-insured patients), but not to patients who paid in cash or through regular healthcare insurance, even when those patients had substantially similar injuries. Id. ¶¶ 81, 84–86. GEICO submits that the sole determinant used by Barron for deciding the appropriate protocol for an individual patient was whether the invoice for their services would be submitted to an insurer or a federal entity like Medicare. Id. ¶ 88.

Second, GEICO alleges that Barron fabricated complaints from patients to substantiate the treatment and billing, as evidenced by the fact that, for example, the records for non-English-speaking patients listed specific, subjective complaints despite the fact that Barron does not have translators at its offices. Id. ¶¶ 101–04. Moreover, Barron submitted template billing forms, without corresponding or supporting medical records, which GEICO argues is in violation of chiropractic regulations. Id. ¶¶ 109–12.

Third, GEICO alleges that Barron submitted invoices certifying that billed services were rendered by a treating chiropractor, despite the fact that many of the services were actually rendered by unlicensed persons with no formal training, sometimes in a separate physical therapy office also owned by Barron, id. ¶ 129–31, 138–41, and that Barron engaged in this misleading billing practice for the purpose of seeing more patients, billing for more services, and receiving increased payments, id. ¶¶ 148, 159, 164–66, 176–78.

Fourth, GEICO claims that Barron charged GEICO-insured patients and billed GEICO for spinal decompression treatments that it publicly advertised as free for all new patients. Id. ¶¶ 151–54.

Fifth, GEICO alleges that Barron made a myriad of false and misleading statements concerning the services they provided to GEICO-insured patients in both the medical records themselves and the billing invoices, including, inter alia, misidentifying which individual

rendered each treatment, misusing Current Procedure Terminology or "CPT" codes created by the American Medical Association ("AMA") to miscategorize the medical services rendered and invoiced for reimbursement, and submitting invoices and records using a Health Insurance Claim Form that falsely certified that the statements on the forms were accurate and not misleading. Id. ¶¶ 158, 160–76, 191–92.

Sixth, GEICO submits that Barron engaged in deceptive "up-coding" techniques that allowed them to bill at a higher rate than that of the service actually performed, including, for example, by claiming that certain GEICO-insured patients were "new patients," even if they had previously been seen by Barron, in order to charge GEICO for the more expensive "new patient" visit. Id. ¶¶ 215–16, 221–27.

GEICO also asserts that this is not the first time Barron has been disciplined for failing to accurately document services or billing for services that were never actually rendered, claiming that, in July 2009, the Massachusetts Board of Registered Chiropractors executed a Consent Agreement with Barron, disciplining them for the precise types of conduct documented in the complaint. Id. ¶¶ 200–02.

Additionally, the complaint further alleges that Barron defrauded GEICO by engaging in an unlawful and improper referral scheme by exclusively referring GEICO-insured patients being treated at Dr. Barron's physical therapy clinic, Be Pain Free, to the chiropractic office also owned by Dr. Barron, including patients who did not necessarily need chiropractic care, for the purpose of deriving additional billing. Id. ¶¶ 243–44, 246, 254, 258.

Finally, GEICO claims that Barron, in violation of Massage Therapy regulations, provided massage therapy services without proper licensure by advertising and providing

massage therapy services, despite the fact that it did not have the license required by statute and did not fall into any licensure exception. Id. ¶¶ 262–67.

In support of its general allegations, GEICO specifically identifies twelve "exemplar" claims, which it claims are illustrative of Barron's widespread deceitful and fraudulent conduct. Id. ¶¶ 270–580. GEICO also references transcripts of sworn statements by Barron's GEICO-insured patients, which corroborate many of the allegations made throughout the complaint, Compl. Exs. 20–23, 33, 35, 38, 42, 44, 46, including that unqualified personnel administered patients' treatment, see, eg., Compl. ¶ 282, that patients were left unsupervised while doing therapeutic exercises, see, eg., id. ¶ 290, and that, despite corresponding records which list specific medical complaints purportedly made by patients, non-English-speaking patients were seen without translators, see, e.g., id. ¶¶ 506–07. In addition to these "exemplar" claims, GEICO asserts that 169[1] additional insurance claims were submitted as part of Barron's fraudulent scheme. See Compl. Ex. 3.

Based on these factual allegations, GEICO asserts the following state law causes of action: common law fraud (Count I); civil conspiracy (Count II); money had and received (Count III); violations of Massachusetts General Laws Chapter 93A (Count IV); breach of contract (Count V); and intentional interference with advantageous business relationships (Count VI). As relief, GEICO requests damages, costs and interest, reasonable attorneys' fees, and an injunction.

---

[1] The total number of claims at issue is not completely clear. In some briefs, the reported number of total claims is 179, but in others it is 181. See [ECF No. 32 at 1 n.3]. For consistency, this memorandum will refer to 181 total claims, including the 12 example claims.

## II. MOTION TO DISMISS PURSUANT TO THE ANTI-SLAPP STATUTE

### A. Legal Standard

The Massachusetts Anti-SLAPP statute permits a party to bring a special motion to dismiss when the allegations against it "are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth." Mass. Gen. Laws ch. 231, § 59H. The statute further provides that:

> The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

Id.

The Massachusetts Supreme Judicial Court has laid out a two-step burden-shifting procedure for such special motions to dismiss:

> At the first stage, a special movant must demonstrate that the nonmoving party's claims are solely based on its own petitioning activities . . . At the second stage, if the special movant meets this initial burden, the burden will shift . . . to the nonmoving party. The nonmoving party may still prevail . . . by demonstrating that the special movant's petitioning activities upon which the challenged claim is based lack a reasonable basis in fact or law, i.e. constitute sham petitioning, and that the petitioning activities at issue caused it injury. If it cannot make this showing, however, the nonmoving party may . . . [also] meet its second-stage burden and defeat the special motion to dismiss by demonstrating in the alternative that each challenged claim . . . was not primarily brought to chill the special movant's legitimate petitioning activities.

Blanchard v. Steward Carney Hosp., Inc., 75 N.E.3d 21, 38 (Mass. 2017). "In this inquiry, courts consider pleadings and affidavits without indulging inferences in favor of the non-moving party." Bargantine v. Mechs. Co-op. Bank, No. 13-11132-NMG, 2013 WL 6211845, at *2 (D. Mass. Nov. 26, 2013). The standard of review under the anti-SLAPP framework is "fundamentally different from a Rule 12 motion" because it "incorporates additional fact-finding

beyond the facts alleged in the pleadings." S. Middlesex Opportunity Council, Inc. v. Town of Framingham, No. 07-12018-DPW, 2008 WL 4595369, at *10 (D. Mass. Sept. 30, 2008).

### B.    Discussion

Prior to GEICO filing the instant lawsuit, Barron Chiropractic initiated at least four lawsuits in state court against GEICO in an effort to recover unpaid PIP benefits.[2] Barron argues that the instant complaint must be dismissed because it is based on these state court suits, which are considered protected petitioning activity within the meaning of the Anti-SLAPP statute. The "employment of legal mechanisms," including filing a claim with a judicial body, "plainly constitute[s] petitioning activity under the anti-SLAPP statute." SMS Fin. V, LLC v. Conti, 865 N.E.2d 1142, 1149 (Mass. App. Ct. 2007). To prevail on this special motion to dismiss, however, Barron "must make a threshold showing through pleadings and affidavits that the claims against it are based on the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Blanchard, 75 N.E.3d at 29 (quoting Fustolo v. Hollander, 920 N.E.2d 837, 840 (Mass. 2010)) (further internal quotations omitted).[3]

---

[2] Boston Municipal Court (Dorchester Div.), No. 1607CV43 (claimant "S.L.," filed Jan. 27, 2016); Boston Municipal Court (Central Div.), No. 1601CV250 (claimant "J.S.," filed Feb. 17, 2016); Boston Municipal Court (Central Div.), No. 1601CV342 (claimant "T.V.," filed Feb. 29, 2016); and Boston Municipal Court (Central Div.), No. 1601CV279 (claimant "M.F.," filed Feb. 19, 2016).

[3] Only one of the defendants here, Barron Chiropractic and Rehabilitation, is a party to the state court actions. See [ECF No. 26 at 5; ECF No. 26-3]. Because the Court, as explained infra, denies the special motion to dismiss, the Court need not determine whether the individual defendants, as employees of Barron Chiropractic, may avail themselves of the Anti-SLAPP statute's protections. See Kobrin v. Gastriend, 821 N.E.2d 60, 68 (Mass. 2005) ("[T]he statute requires that the protected party have more than a mere contractual connection to the proceedings that are the basis of the petitioning activity."); see also Fustolo, 920 N.E.2d at 842 (holding that journalist's written coverage of local events in which she had a personal interest did not constitute petitioning activity because she "was not 'petitioning' in the sense of personally seeking redress of a grievance of [her] own" (citing Kobrin, 821 N.E.2d at 68 n.14)).

Barron has failed to meet its burden. In determining whether GEICO's claims have any substantial basis other than the petitioning activity, "the focus solely is on the conduct complained of" in the complaint. See Demoulas Super Mts., Inc. v. Ryan, 873 N.E. 2d 1168, 1172 (Mass. App. Ct. 2007) (quoting One Office, Inc. v. Lopez, 769 N.E. 2d 749, 757 (Mass. 2002)). Here, the complaint is largely based on allegations of Barron's widespread fraudulent billing scheme, and not on Barron's petitioning activity in state court. See Keystone Freight Corp. v. Bartlett Consol., Inc., 930 N.E.2d 744, 752–53 (Mass. App. Ct. 2010) (holding that plaintiff's "counts for deceit, negligent misrepresentation, and violation of G.L. c. 93A are grounded in [plaintiff's] alleged billing misconduct and not in the fact that [the defendant] sued for payment"). The fact that some of the bills in the state court litigation are at issue in the instant litigation does not turn this into a SLAPP suit, as GEICO is complaining about the allegedly fraudulent activity underlying those bills, not the fact that Barron engaged in PIP litigation.

Given that Barron cannot meet its threshold burden of showing that this lawsuit is based solely on Barron's protected petitioning activity, the analysis ends here. See Keystone, 930 N.E.2d at 753 n.12; see also Steinmetz v. Coyle & Caron, Inc., No. 15-cv-13594-DJC, 2016 WL 4074135, at *5 (D. Mass. July 29, 2016) (denying anti-SLAPP motion before analyzing alternative 12(b)(6) grounds for dismissal).

## III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.  Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med. Inc., 647 F.3d 377, 383

(1st Cir. 2011). In ruling on a motion under Rule 12(b)(6), the Court "must consider the complaint, documents annexed to it, and other materials fairly incorporated within it," which "sometimes includes documents referred to in the complaint but not annexed to it" and "matters that are susceptible to judicial notice." <u>Rodi v. S. New Eng. Sch. of L.</u>, 389 F.3d 5, 12 (1st Cir. 2004).

Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. <u>Id.</u> To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted).

Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732 F.3d 77, 80 (1st Cir. 2013) (quoting <u>Twombly</u>, 550 U.S. at 570). "The plausibility standard invites a two-step pavane." <u>Id.</u> (quoting <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 45 (1st Cir. 2012)). "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" <u>Id.</u> (quoting <u>Morales-Cruz v. Univ. of P.R.</u>, 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Morales-Cruz</u>, 676 F.3d at 224). "Although not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Boroian v. Mueller</u>, 616 F.3d 60, 65 (1st Cir. 2010) (internal citations and quotations omitted). "The make-or-break standard . . . is

that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**B.    Discussion**

   i.   Massachusetts' No-Fault Automobile Insurance and Mandatory PIP Coverage

Massachusetts created a no-fault automobile insurance scheme in an effort "to reduce the number of small motor vehicle tort cases being entered in the courts of the Commonwealth, to provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses, and to address the high cost of motor vehicle insurance in the Commonwealth." Estrada v. Progressive Direct Ins. Co., 53 F. Supp. 3d 484, 486 (D. Mass. 2014) (quoting Flanagan v. Liberty Mut. Ins. Co., 417 N.E.2d 1216, 1219 (Mass. 1981)). As part of the no-fault statutory scheme, Massachusetts requires that automobile insurers provide personal injury protection benefits to their insureds regardless of fault. Mass. Gen. Laws ch. 90, § 34M. The Massachusetts Supreme Judicial Court ("SJC") explained:

> The term 'personal injury protection' is defined as 'provisions of a motor vehicle liability policy . . . which provide for payment to the named insured,' or to any passenger of the insured's car, 'of all <u>reasonable</u> expenses incurred within two years from the date of accident for <u>necessary</u> medical, surgical, x-ray, and dental services . . . as a result of bodily injury' caused by the accident . . . .'

Ortiz v. Examworks, Inc., 26 N.E.3d 165, 169 (Mass. 2015) (emphasis added) (quoting Mass. Gen. Laws 90, § 34A).

Under Section 34A, automobile insurers must offer at least $8,000 in PIP benefits, but are only responsible for the first $2,000 in medical-related expenses, and then any amount up to $8,000 not covered by a health insurer. See Creswell v. Med. W. Cmty. Health Plan, Inc., 644 N.E.2d 970, 972 (Mass. 1995). Section 34M provides for "the prompt payment to those who

provide health care services in expectation of payment from an insurance company." <u>Hodnett v. Arbella Mut. Ins. Co.</u>, No. 9365, 1996 WL 480766, at *2 (Mass. Dist. Ct. Aug. 12, 1996).

Barron raises numerous grounds for dismissal generally applicable to all claims—abstention, preemption, and timeliness—and also some grounds specific to the individual claims.

### ii. <u>Abstention</u>

Barron argues that the Court should abstain in favor of the four cases initiated by Barron and currently pending in state court because, in each of those cases, GEICO has counterclaimed with claims substantially similar to the ones here. GEICO responds that, as a general rule, the pendency of a state suit does not bar federal proceedings and the relevant factors weigh against abstaining in this particular case and that, in any event, abstention is inappropriate as to the individual defendants because they are not parties to the state suits.

A district court may defer to the state court "in situations involving the contemporaneous exercise of concurrent jurisdiction" under certain circumstances. <u>See</u> <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976). Abstention, however, is the "exception, not the rule." <u>Id.</u> at 813; <u>see also</u> <u>Nazario-Lugo v. Caribevision Holdings, Inc.</u>, 670 F.3d 109, 114 (1st Cir. 2012) ("[T]here is nothing unusual about parallel litigation resolving similar controversies in both state and federal court."). "There must be some extraordinary circumstances" to warrant abstention under <u>Colorado River</u>. <u>Currie v. Group Ins. Comm'n</u>, 290 F.3d 1, 10 (1st Cir. 2002); <u>see also</u> <u>Nazario-Lugo</u>, 670 F.3d at 115 (noting that <u>Colorado River</u> "doctrine is to be used sparingly and approached with great caution"). The First Circuit has provided a list of non-exclusive factors to help determine whether a court should abstain under <u>Colorado River</u> and its progeny:

> (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the

order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003). No single factor is determinative. Id.

Here, the Court finds no exceptional circumstances, and the totality of the relevant considerations weigh against abstention. More specifically, no court has assumed jurisdiction over any res and there is no contention that the federal forum is less convenient than the state forum. Although the state cases were filed first, all of the state cases are currently stayed and Barron has not argued that there has been significantly more progress made in those cases than here. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983) ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Further, there is no exceptional basis present that would favor the state court actions over this one.[4] See KPS, 318 F.3d at 10–11 ("[C]oncerns about piecemeal litigation 'should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.'" (quoting Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991))). Moreover, it appears that the liability of the individual defendants will not be adjudicated in any of the state court proceedings. Finally,

---

[4] Barron completely fails to support, either by analysis or citation, its proposition that the PIP statute "mandate[s] . . . piecemeal litigation." See [ECF No. 20 at 29]. To the extent that this proposition relies on Barron's argument that the PIP statute preempts GEICO's claims, the Court explains below why that argument also fails. Moreover, at issue in the instant suit is not simply PIP coverage, but Barron's allegedly fraudulent conduct underlying the submission of the PIP claims.

as illustrated by the analysis below, the Court does not find Barron's argument that the instant case is "vexatious or contrived" to be determinative. Accordingly, abstention is not warranted.

iii. <u>Preemption</u>

Citing Mass. Gen. Laws, ch. 90, §§ 34A and 34M, and Mass. Gen. Laws, ch. 231, § 6D, Barron argues that GEICO's common law state claims are preempted by Massachusetts' no-fault remedial scheme, which provides the exclusive remedy for GEICO's claims. According to Barron, under Section 34M, GEICO's only remedies with respect to the common law claims based on the alleged fraudulent PIP medical claims are to either pay the claim or to "give written notice of its intent not to make such payments, specifying reasons for said nonpayment."

"Massachusetts courts have been clear that 'an existing common law remedy is not to be taken away by statute unless by direct enactment or necessary implication.'" <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 56 (1st Cir. 2013) (quoting <u>Eyssi v. City of Lawrence</u>, 618 N.E.2d 1358, 1361 (Mass. 1993)) (holding common law causes of action at issue not preempted by Massachusetts wage-and-hour statutes). The statutory provisions identified by Barron do not address a situation in which an insurer was allegedly defrauded into paying PIP claims and only discovers the fraud following payment, <u>see</u> <u>Columbia Chiropractic Grp., Inc. v. Trust Ins. Co.</u>, 712 N.E.2d 93, 97 (Mass. 1999) ("The statute is silent, however, on the treatment of a situation in which the insurer is unable to determine within ten days whether it should pay a physician's bill."), nor does it appear that a claim based on such a scenario would be preempted by necessary implication. Indeed, courts routinely recognize common law or other statutory causes of action related to PIP claims. <u>See, e.g.</u>, <u>Columbia Chiropractic</u>, 712 N.E.2d at 95 (in case arising out of unpaid PIP benefits, affirming judgment that chiropractors were liable under Chapter 93A based on excessive treatment and billing); <u>Commerce Ins. Co. v. Corbett</u>, No. 05-2012-D, 2011 Mass.

Super. LEXIS 396, at *3 (Mass. Super. Ct. Sept. 14, 2011) (in case arising out of unpaid PIP

benefits, granting summary judgment in favor of insurers for fraud and civil conspiracy claims);

Blue Hill Chiropractic Grp., Inc. v. Encompass Ins. Co., No. SUCV200502075, 2011 WL

3672049, at *18–*20 (Mass. Super. May 5, 2011) (in case arising out of unpaid PIP benefits,

granting insurer's motion on summary judgment on damages for claims of fraud, Chapter 93A

violation, civil conspiracy, and RICO). Accordingly, GEICO's claims are not preempted.

      iv.  Statute of Limitations

Barron next argues that each of GEICO's claims are time-barred because Exhibit 3B to

the complaint, in which GEICO estimates its damages, indicates that GEICO incurred charges in

2010 for investigating medical claims made by Barron and therefore knew or should have known

of the alleged fraudulent scheme at that time. GEICO responds that the discovery rule tolls the

statute of limitations in this case.

"To prevail on a statute of limitations defense at the motion to dismiss stage, 'the facts

establishing that defense must (1) be definitively ascertainable from the complaint and other

allowable sources of information and (2) suffice to establish the affirmative defense with

certitude.'" Nat'l Ass'n of Gov't Emps. v. Mulligan, 854 F. Supp. 2d 126, 131 (D. Mass. 2012)

(quoting Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008)). In

Massachusetts, the discovery rule tolls the statute of limitations "where a wrongdoer concealed

the existence of a cause of action through some affirmative act done with the intent to deceive."

Patsos v. First Albany Corp., 741 N.E.2d 841, 846 (Mass. 2001). "In most instances, the question

when a plaintiff knew or should have known of its cause of action is one of fact that will be

decided by the trier of fact." Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d 1053, 1063 (Mass. 2002).

The Court cannot determine at this stage, based on Exhibit 3B or the allegations in the complaint, whether any of the claims are time-barred. Exhibit 3B indicates that individual claims were investigated in 2010, but does not establish "with certitude" that GEICO knew of the alleged fraudulent scheme in 2010. Whether or not GEICO should have known about the scheme based on the investigation into the individual claims cannot be appropriately resolved at this stage. Moreover, GEICO asserts in the complaint that it only learned about core aspects of the alleged fraudulent scheme through investigative efforts undertaken in preparation for this litigation, namely the examinations under oath. Compl. ¶¶ 167, 203. If true, the earliest GEICO could have discovered the purported fraudulent scheme would have been the date of the first examination under oath, which appears to be March 11, 2015 [ECF No. 1–20 at 1], and the complaint, filed in April of 2016, would be well within the applicable three, four, or six year limitations periods.[5] Accordingly, the Court cannot now conclude that the claims are time-barred.

v.  Common Law Fraud (Count I) and Violation of Chapter 93A (Count IV)[6]

To support its fraud-based claims, GEICO alleges that Barron engaged in fraudulent behavior by:

(a) creating and submitting false and fraudulent insurance claims; (b) participating in and/or causing the preparation and submission of fraudulent medical records,

_____

[5] The statutory limitations periods for GEICO's claims are: three years for common law fraud (Mass. Gen. L. ch. 260, § 2A); three years for civil conspiracy (Mass. Gen. L. ch. 260, § 2A); six years for the money had and received claim (Mass. Gen. L. ch. 260, § 2); four years for the 93A claims (Mass. Gen. L. ch. 260, § 5A); six years for the breach of contract claim not seeking to recover for personal injuries (Mass. Gen. L. ch. 260, § 2); and three years for intentional interference with advantageous business relationships (Mass. Gen. L. ch. 260, § 2A).
[6] Because Barron challenges GEICO's other fraud-based claims (civil conspiracy and intentional interference with advantageous business relationships) on additional grounds, the Court

15

treatment notes and medical invoices regarding treatment that was never performed, not warranted and/or falsely documented; (c) intentionally misrepresenting the qualifications of persons involved in administrating chiropractic and medical services to patients; (d) the overutilization of treatment by prescribing a pre-determined treatment protocol devoid of individualized medical decision making; (e) engaging in improper reciprocal referrals; and (f) violations of the Massachusetts laws and regulations enacted for the protection of the public's health, safety, and welfare.

Compl. ¶ 587. GEICO further alleges that Barron's fraudulent acts or omissions constituted intentionally unfair and deceptive business practices in violation of Chapter 93A. Compl. ¶ 606.

Barron argues that the fraud-based claims should be dismissed because: (1) GEICO cannot meet the Rule 9(b) pleading requirements; (2) there can be no plausible "false statements" where GEICO has failed to allege an objective standard of care; (3) there is no reasonable and necessary treatment presumption as a matter of law; (4) there can be no common law fraud where the claim is based on the same records that GEICO already reviewed in adjusting the individual claims; and (5) GEICO lacks standing to pursue private enforcement of chiropractic regulations. An analysis of each of these arguments follows.

*1. Standards for Common Law Fraud and Chapter 93A Violations*

Under Massachusetts law, to prove common law fraud, a plaintiff must show that a defendant made "1) a false representation of a material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing plaintiff to act thereon and 4) . . . that [the plaintiff] relied upon the representation as true and acted upon it to his detriment." FranCounsel Grp., LLC v. Dessange Int'l SA, 980 F. Supp. 2d 1, 6 (D. Mass. 2013).

Chapter 93A of the Massachusetts Consumer Protection Act makes unlawful the "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch.

addresses those counts separately; however, the analyses in this section apply to all of GEICO's fraud-based claims.

93A, § 2(a). The statute does not define what constitutes an unfair or deceptive act or practice, but the Massachusetts Supreme Judicial Court ("SJC") has stated:

> the following are considerations to be used in determining whether a practice is to be deemed unfair: (1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous; [and] (3) . . . causes substantial injury [to] . . . competitors or other businessmen.

Datacomm Interface, Inc. v. Computerworld, Inc., 489 N.E.3d 185, 196 (Mass. 1986) (internal quotation marks omitted). Stated differently, an act is unfair within the meaning of Chapter 93A if it is "oppressive or otherwise unconscionable in any respect." Id. (internal quotation marks omitted). "There is a close relationship between a common law action for fraud or deceit and an action for unfair or deceptive practices under Chapter 93A," Nickerson v. Matco Tools Corp., Div. of Jacobs Mfg. Co., 813 F.2d 529, 531 (1st Cir. 1987), although Chapter 93A "goes far beyond the scope of these common law actions," Datacomm, 489 N.E.3d at 197.

A complaint pleading a state law claim based on fraud must also comply with Federal Rule of Civil Procedure 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Wilder v. Toyota Fin. Servs. Ams. Corp., 764 F. Supp. 2d 249, 260 (D. Mass. 2011) (quoting Fed. R. Civ. P. 9(b)). To meet this heightened pleading standard, GEICO must allege the "who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. Southern New England School of Law, 389 F.3d 5, 15 (1st Cir. 2004). "While conclusory allegations are insufficient, Rule 9(b) may be satisfied 'when some questions remain unanswered, provided the complaint as a whole is sufficiently particular to pass muster.'" U.S. ex rel. Leysock v. Forest Labs., Inc., 55 F. Supp. 3d

210, 217 (D. Mass. 2014) (quoting <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 45 (1st Cir. 2009)).

2. <em>Sufficiency of the Pleading Pursuant to Rule 9(b)</em>

Barron argues that GEICO cannot meet the Rule 9(b) requirement by relying on exemplary claims and must plead each allegedly fraudulent bill with the requisite particularity. GEICO asserts that complex patterns of fraud may be pleaded with a lesser degree of specificity and that, under First Circuit precedent, a plaintiff is excused from pleading fraud with great specificity when the underlying facts are uniquely within the defendant's control.

There are two main components to GEICO's fraud-based claims: (1) allegations of the overarching fraudulent scheme, including precise descriptions of the systematic fraudulent misrepresentations, and (2) twelve examples describing the fraudulent misrepresentations in the context of individual claims. First, GEICO pleads specific patterns and practices of wrongful conduct that it alleges were routinely undertaken by Barron, including in connection with all claims submitted to GEICO during the relevant time period. The alleged wrongful conduct includes: billing for illusory evaluations and treatments, overutilization of treatment, misrepresenting the nature of the treatment (e.g., that it was administered by a licensed chiropractor when it was actually administered by an unlicensed and unqualified ancillary staff member), and up-coding, all aimed at obtaining larger payments from GEICO. Compl. ¶ 2. The complaint further alleges facts from which the Court infers that each of the named individual defendants engaged in all of these fraudulent acts and practices in connection with GEICO-insured patients during the relevant time period.

Second, GEICO attaches Exhibit 3 to the complaint, which includes the claim number, insured initials, claimant initials, date of loss, the amount Barron billed, and the amount that

GEICO paid for each of the claims at issue. Although Exhibit 3 does not list the specific fraudulent misrepresentation in each claim, the Court is able to reasonably infer that, given how routine and endemic the wrongful practices and acts allegedly were, each of the listed claims arose out of at least one of the alleged fraudulent acts or practices outlined in the complaint. See e.g., Compl. ¶ 2. GEICO then details twelve example claims with great particularity to illustrate the wrongful acts and practices on a more granular, claim-specific basis. In this way, GEICO pleads a plausible claim for fraud with the requisite particularity in connection with a subset of claims, and plausibly alleges that the fraud was "systematic" and therefore "infected" all remaining bills. See United States v. Universal Health Servs., Inc., 780 F.3d 504, 515 (1st Cir. 2015), vacated on other grounds, 136 S. Ct. 1989 (2016) (holding that "rais[ing] a particular and plausible allegation of fraud" by pleading details with respect to the bills of one patient was sufficient for Rule 9(b) purposes as to other patients because alleged fraud arose from a "systematic failure" that "infected" all bills). Such pleading satisfies the aims of Rule 9(b), which are "to 'give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery.'" U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).

Accordingly, the complaint satisfies Rule 9(b). Cf. D'Agostino v. ev3, Inc., 845 F.3d 1, 10 (1st Cir. 2016) ("[A] relator [satisfies Rule 9(b)] . . . by alleging with particularity examples of actual false claims submitted to the government." (emphasis added)); Leysock, 55 F. Supp. 3d at 217 (D. Mass. 2014) (holding that plaintiff can show that defendant caused submission of false claim "without necessarily providing details as to each false claim."); First Choice Armor &

Equip., Inc. v. Toyobo Am., Inc., 717 F. Supp. 2d 156, 161 (D. Mass. 2010) (holding Rule 9(b) requirements met where plaintiff "allege[d] at least 25 examples of intentional misrepresentations or fraudulent omissions"); Aiu Ins. Co. v. Olmecs Med. Supply, Inc., No. CV-042934, 2005 WL 3710370, at *12, *14 (E.D.N.Y. Feb. 22, 2005) (denying motion to dismiss with respect to common law fraud claim and holding Rule 9(b) requirements met even though "plaintiffs do not specify the fraud involved for each submission").

### 3. *Objective Standards of Care*

Citing numerous False Claims Act cases, including, for example, U.S. ex rel. Mikes v. Straus, 274 F.3d 687, 700 (2d Cir. 2001) ("Permitting qui tam plaintiffs to assert that defendants' quality of care failed to meet medical standards would promote federalization of medical malpractice, as the federal government or the qui tam relator would replace the aggrieved patient as plaintiff."), abrogated by Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989 (2016), Barron argues that the fraud-based claims should be dismissed because a chiropractor's opinion regarding the appropriate course of treatment is not actionable. Under Massachusetts law, "[a] statement on which liability for fraud may be based must be one of fact; it may not be one of opinion, or conditions to exist in the future, or matters promissory in nature." Stolzoff v. Waste Sys. Int'l, Inc., 792 N.E.2d 1031, 1041 (Mass. App. Ct. 2003). Central to GEICO's claims, however, is that the chiropractors in fact formed no opinion as to the necessary or reasonable course of treatment because every patient, regardless of his or her individual circumstances, was prescribed a single treatment plan in order to maximize PIP benefits. Furthermore, regardless of what a reasonable or necessary treatment plan might be, GEICO also alleges that Barron misrepresented, through medical records and invoices submitted to GEICO, the nature of the treatments that patients actually received, who administered those treatments,

and sometimes whether those treatments ever took place, and that GEICO then made payments to Barron based on those misrepresentations. Whether outright lies or only half-truths, "[u]nder Massachusetts law: 'a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party,'" notwithstanding the lack of a fiduciary relationship. First Choice, 717 F. Supp. 2d at 162 (quoting V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir. 1985)). "This duty to avoid misrepresentations is so strong that the deceived party is not charged with failing to discover the truth." V.S.H. Realty, 757 F.2d at 415. GEICO's allegations do not rest on mere opinion concerning appropriate medical treatment, but involve actual deceit and subterfuge.[7]

### 4. Standing

Barron also argues that GEICO lacks standing to pursue claims premised on the violation of Massachusetts' chiropractic regulations because enforcement of these regulations is a task exclusively within the province of the Board of Registration of Chiropractors. GEICO, however, does not try to bring claims directly under the chiropractic regulations. The SJC permits insurers to assert Chapter 93A claims based on violations of agency regulations, and specifically violations of the regulations issued by the Board of Registration of Chiropractors. See Columbia

---

[7] In light of Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1996 (2016), Barron has failed to persuade this Court that deviations from the Massachusetts chiropractic regulations and misuse of CPT Codes cannot, as a matter of law, provide a basis for GEICO's fraud-based claims. In Universal Health, a case interpreting the False Claims Act, the Supreme Court held that "Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment," id. at 1996, and that "by submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment," id. at 2000. Barron fails to distinguish Universal Health. Finally, contrary to Barron's assertion, GEICO has pleaded that the alleged "up-coding" caused damage to GEICO because it led to inappropriately inflated insurance charges that resulted in larger payments to Barron than it otherwise would have been entitled to. See Compl. ¶¶ 2, 216–235.

_Chiropractic_, 712 N.E.2d at 95 (holding that "[t]he claim that a G.L. c. 93A violation cannot be advanced directly in a court of law based on a violation of a regulatory agency's regulations lacks merit"); see also Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 530–32 (Mass. 2006) (holding that 93A claim was not necessarily foreclosed where plaintiffs sought private relief for violation of statute regulating lease insurance coverage). In _Columbia Chiropractic_, the insurer counterclaimed that the chiropractor engaged in unfair and deceptive billing in violation of Chapter 93A, §§ 2, 11. The SJC rejected the chiropractor's argument that the Chapter 93A claim failed because it "allege[d] violations of regulations of the Board of Registration of Chiropractors (board) and that the board should, in the first instance, deal with such allegations." _Columbia Chiropractic_, 712 N.E.2d at 95. Barron fails to explain why the outcome here should be any different.

Barron's citation to _Darviris v. Petros_, 812 N.E.2d 1188 (Mass. 2004), is also unavailing because _Darviris_ did not hold that a party cannot assert an affirmative claim premised on a violation of a regulation. Rather, it held that "the negligent provision of medical care, without more, does not give rise to a claim under G.L. c. 93A," and then explicitly noted that "the entrepreneurial and business aspects of providing medical services," such as advertising and billing, could nonetheless be actionable under Chapter 93A. _Darviris_, 812 N.E.2d at 1193. Here, GEICO does not assert "merely a claim for the negligent delivery of medical care," see id. at 1194, but rather alleges fraudulent billing practices, many of which allegedly involve violations of Massachusetts chiropractic regulations. Cf. _Little v. Rosenthal_, 382 N.E.2d 1037, 1041 (Mass. 1978) (distinguishing "c. 93A actions which allege unfair trade practices in medical treatment from those which merely raise such questions as fraudulent or deceptive billing practices by a health care provider"). Finally, the Court need not now resolve the question of whether violations

of any of the Massachusetts chiropractic regulations at issue constitute per se deceptive conduct under Chapter 93A pursuant to 940 Mass. Code Regs. 3.16.[8] Although in <u>Darviris</u>, the SJC held that merely negligent conduct that violated a particular regulation could not constitute a per se 93A violation pursuant to 940 Mass. Code Regs. § 3.16, <u>Darviris</u>, 812 N.E.2d at 1195–96, here, GEICO relies on different regulations and has plausibly alleged more than mere negligence in support of its fraud-based claims.[9]

### 5. *Representation of Reasonable and Necessary Treatment*

Barron next argues that the complaint relies on a "reasonable and necessary treatment" presumption that does not exist in Mass. Gen. Laws ch. 90, § 34M. First, the Court does not understand the complaint to entirely rely on such a presumption where it alleges affirmative fraudulent misrepresentations and unfair trade practices. Further, the Massachusetts SJC has clearly stated that "[a]n insurer is required to pay '[p]ersonal injury protection benefits' <u>only for</u> 'reasonable expenses . . . for necessary medical . . . services." <u>Columbia Chiropractic Grp.</u>, 712 N.E.2d at 97 (emphasis added) (quoting G.L. c. 90, § 34A). "Statutory purposes would not be served generally if an insurer were obliged to pay for unreasonable medical expenses." <u>Id.</u> Moreover, "there is much case law in Massachusetts supporting the proposition that a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." <u>V.S.H. Realty</u>, 757 F.2d at 414. Thus, the case law

---

[8] 940 Mass. Code Regs. 3.16 provides, in relevant part: "[w]ithout limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c.93A, § 2 if . . . [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection."

[9] Although the issue was raised by Barron in its brief, GEICO fails to address how its allegations regarding Barron's provision of massage therapy without a license support the 93A and common law fraud claims where the complaint does not allege that GEICO was billed for massage therapy. Accordingly, the Chapter 93A and fraud claims may not proceed on those facts.

and relevant statutes do not preclude concluding that Barron impliedly or explicitly represented that the treatment was necessary and reasonable in its claims to GEICO.

Furthermore, the complaint alleges that Barron submitted invoices to GEICO by way of a Health Insurance Claim Form ("CMS-1500"). Compl. ¶ 191. The CMS-1500 specifies, under a section entitled "signature of physician (or supplier)," that whoever signs the form "certif[ies] that the services listed above were medically indicated and necessary to the health of this patient and were personally furnished by me or my employee under my personal direction." [ECF No. 1-13]. Barron argues that the CMS-1500 certification does not apply to Barron because the form states at the top that "this form is used by various government and private health programs," and then instructs the recipient to "see separate instructions issued by applicable programs," id. It is not clear, however, whether there were any separate instructions or whether the specifications on the CMS-1500 continued to apply despite any separate instructions. At this stage, the complaint plausibly alleges that Barron explicitly or impliedly certified that the treatment it provided and billed GEICO for was necessary and reasonable, but that the treatment it ultimately provided was not.

### 6. Use of Medical Records in Alleging Fraud

Finally, Barron argues that GEICO cannot base its fraud allegations on the same medical records it used to adjust the insurance claims in the first place. In other words, GEICO had all the information it needed to determine that the treatment was non-compensable within the time period laid out in Section 34M, and therefore GEICO could not have justifiably relied on any fraudulent misrepresentations allegedly contained in them. In determining that there was fraud underlying the PIP claims, however, GEICO also relied on patient testimony given under oath, external to the medical records, that revealed the treatment GEICO-insured patients actually

obtained and the true nature of Barron's practices. <u>See, e.g.</u>, Compl. ¶¶ 167, 203. Accordingly, the instant case is distinguishable from <u>Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.</u>, 256 F.R.D. 49, 64 (D. Conn. 2008), in which the plaintiffs, in order to allege false representations, relied solely on the medical records that were submitted for payment.

Accordingly, the motion to dismiss is denied with respect to the common law fraud claim (Count I) and the Chapter 93A claim (Count IV).

vi.   <u>Money Had and Received (Count III)</u>

In Count III, GEICO alleges that "Barron Chiropractic's intentional retention of amounts paid by GEICO is wrongful because these monies were obtained as the direct result of Defendants' violation of duties to its patients and its duties to comply with chiropractic regulations and policies." Complaint ¶ 597. It further alleges that Barron was "unjustly enriched" because GEICO would not have paid the medical bills had it known about Barron's wrongful and illegal conduct. Complaint ¶¶ 598, 601. Barron argues that Count III is actually a claim for unjust enrichment and that GEICO is not entitled to an equitable remedy when it has an adequate remedy at law.

"Money had and received is based on money, or its equivalent, which in 'equity and good conscience' should be returned to the claimant and is often styled as money that should be returned 'where one is unjustly enriched at another's expense.'" <u>Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.</u>, 470 F.3d 14, 17 n.2 (1st Cir. 2006) (quoting <u>Rabinowitz v. People's Nat'l Bank</u>, 126 N.E. 289, 290 (Mass. 1920)). Unjust enrichment has the same elements but does not require that the benefit take the form of money or its equivalent. <u>Id.</u> Many courts consider claims for money had and received to be identical to claims for unjust enrichment. <u>Id.</u> at 21 n.6. Both are equitable remedies that are only available when a plaintiff lacks an adequate

remedy at law. Ruiz v. Bally Total Fitness Holding Corp., 447 F. Supp. 2d 23, 29 (D. Mass.

2006), aff'd, 496 F.3d 1 (1st Cir. 2007). The "mere availability [of adequate remedies at law] is a

bar to a claim of unjust enrichment." Fernandes v. Havkin, 731 F. Supp. 2d 103, 114 (D. Mass.

2010).

In this case, GEICO states plausible Chapter 93A and common law fraud claims, and

therefore has an adequate remedy at law. See Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D.

Mass. 2012), aff'd, 527 F. App'x 20 (1st Cir. 2013) (holding that "[plaintiff's] statutory claim for

unfair and deceptive acts and practices precludes her from bringing equitable claims for unjust

enrichment and money had and received, remedies available only when a party lacks an adequate

remedy at law"). Accordingly, Count III is dismissed.

vii.  Breach of Contract and Breach of Implied Covenant of Good Faith and Fair
       Dealing (Count V)

Barron argues that GEICO's contract claim fails because there is no contract between

Barron and GEICO. GEICO answers that, by virtue of Mass. Gen. Laws ch. 90, § 34M, Barron

became a statutory party to the insurance contracts between GEICO and the patients after

GEICO failed to pay Barron's medical claims and, as a result, GEICO can assert an independent

cause of action against Barron for the breach of the cooperation clause in the insurance contracts.

Mass. Gen. Laws ch. 90, § 34M provides, in relevant part:

> In any case where benefits due and payable remain unpaid for more than thirty days,
> any unpaid party shall be deemed a party to a contract with the insurer responsible
> for payment and shall therefore have a right to commence an action in contract for
> payment of amounts therein determined to be due in accordance with the provisions
> of this chapter.

Barron asserts that Section 34M provides a statutory contractual right to sue that is limited to the

right specified in the provision, and thus only Barron can assert a contract claim against GEICO

for failure to make the required payments. GEICO, on the other hand, provides citations to

Massachusetts cases in which courts appear to construe this statutory contractual right as identical to the contractual right that would exist had GEICO always been a direct party to the contract. See, e.g., Sabino Chiropractic Office v. Arbella Mut. Ins. Co., 2008 WL 5115251, at *2 n.2 (Mass. App. Div. Nov. 25, 2008) ("[P]ursuant to G.L. c. 90, § 34M, fourth par., the plaintiff [provider] is deemed a party to the motor vehicle liability policy and, as such, is in no different position vis-à-vis a relationship with the defendant than that of its patient."). In other words, GEICO claims that it has the same contractual rights against Barron that GEICO has against the insured once the statutory contractual relationship is triggered, which allows GEICO to argue that Barron's provision of false information is a breach of the automobile liability policy's cooperation clause. See Jertson v. Hartley, 174 N.E.2d 663, 667 (Mass. 1961) ("The intentional furnishing of false information of a material nature either before or at trial is a breach of the coöperation clause.").[10]

The Massachusetts SJC consistently describes Section 34M as "authoriz[ing] a medical provider to commence an action in contract against an insurer to recover unpaid benefits for treatment provided to an insured." Boehm v. Premier Ins. Co., 846 N.E.2d 1145, 1145–46 (Mass. 2006). In such cases, the medical provider "may step into the shoes of the insured." Id. at 1146. In Boehm, the SJC emphasized that a Section 34M contract action is no different from an ordinary contract action unless clearly specified by the Legislature. Id. at 1147 (holding that medical providers had a right to a jury trial when bringing a breach of contract claim against an

_____

[10] Barron also argues that GEICO has tried to subtly change the nature of its contract-based claim by framing it as a "fiduciary duty" claim in its opposition briefs. To the extent that this is true, nowhere in the complaint does GEICO allege any special relationship giving rise to a fiduciary duty between Barron and GEICO, how that duty was breached, or how that breach caused the alleged damages, which are necessary elements of a claim for breach of fiduciary duty. See Qestec, Inc. v. Krummenacker, 367 F. Supp. 2d 89, 97 (D. Mass. 2005).

insurer under Section 34M because "[p]arties in contract actions traditionally have enjoyed the right to a jury trial").

Thus, once a Section 34M contract action is initiated, it is treated like any ordinary contract action; however, it does not necessarily follow that an insurer may initiate a Section 34M contract action and independently recover for a breach of the insurance contract. Section 34M does not explicitly create an affirmative cause of action that would allow an insurer to sue a medical provider for breach of an insurance contract. It would overly strain the language of the statute to read Section 34M to say that a medical provider acquires *all* rights and obligations of the insured under the insured's contract with the insurer when Section 34M only explicitly allows a medical provider to sue over an insurer's failure to pay. See Mass. Gen. Laws ch. 90, § 34M ("[A]ny unpaid party shall be deemed a party to a contract with the insurer <u>responsible for payment</u> and shall therefore have a right to commence an action in contract <u>for payment of amounts therein</u> determined to be due in accordance with the provisions of this chapter." (emphasis added)). Moreover, GEICO's interpretation would undermine, or at least fail to serve, the purpose of the relevant portion of Section 34M— to "encourage[] the prompt payment of benefits," <u>see</u> <u>Barron Chiropractic & Rehab., P.C. v. Norfolk & Dedham Grp.</u>, 17 N.E.3d 1056, 1064 (Mass. 2014)—by incentivizing insurers to decline to pay a bill in order to generate a contractual right to sue later. Thus, the Court concludes that Section 34M does not create a contractual right for GEICO to independently sue and recover for breach of contract under these circumstances.

Absent a contract, there can be no breach of the implied covenant of good faith and fair dealing. See <u>Ayash v. Dana-Farber Cancer Inst.</u>, 822 N.E.2d 667, 684 (Mass. 2005) ("The scope

of the covenant is only as broad as the contract that governs the particular relationship.").

Accordingly, Count V is dismissed.

> viii.  Conspiracy (Count II) and Intentional Interference With Advantageous
> Business Relationship (Count VI)

Barron argues that GEICO has failed to adequately plead, pursuant to Rule 9(b), both its

conspiracy and intentional inference claims, which sound in fraud. Specifically, with respect to

conspiracy, Barron contends that GEICO merely parrots the requisite elements without any

specific facts. With respect to intentional interference, Barron asserts that GEICO has failed to

allege that Barron induced or caused the GEICO-insured patients not to perform their contracts

with GEICO. GEICO responds that it has adequately pleaded both the conspiracy and intentional

interference claims because the complaint alleges that the individual chiropractors "acted as the

gatekeeper for the clinic's compliance with Massachusetts chiropractic regulations and laws,"

unfairly and deceptively falsified records to conceal that submissions were actually administered

by unqualified and unlicensed persons, and engaged in up-coding services for unnecessary

treatment that resulted in the depletion of PIP insurance available to GEICO insureds.[11]

*1.  Civil Conspiracy (Count II)*

Under Massachusetts law, "a defendant may be held liable for actions done by others

pursuant to a common design or with the defendant's substantial assistance or encouragement."

Tutor Perini Corp. v. Banc of Am. Sec. LLC, No. 11-10895-NMG, 2013 WL 5376023, at *25

(D. Mass. Sept. 24, 2013) (quoting Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d

344, 363 (D. Mass. 2002)). "Key to this cause of action is a defendant's substantial assistance,

with the knowledge that such assistance is contributing to a common tortious plan." Grant, 183

---

[11] It is not clear whether GEICO intends for each of these allegations to support the conspiracy claim, the intentional interference claim, or both, and thus the Court assumes that GEICO asserts all of these allegations in support of each claim.

F. Supp. 2d at 363 (quoting Kurker v. Hill, 689 N.E.2d 833, 837 (Mass. App. Ct. 1998)). Courts have likened this theory of conspiracy to "a theory of common law joint liability in tort." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994).

A plaintiff does not adequately plead a conspiracy claim when the complaint contains "mere allegations of . . . corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes[, which] are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985). Moreover, "[w]ithout supporting facts regarding the circumstances surrounding the formation of the conspiracy to defraud plaintiffs or plaintiffs' basis for believing that a conspiracy existed for the purpose of defrauding them, the allegation becomes a conclusional accusation of the sort that is proscribed by Rule 9(b)." Id. Here, the complaint fails to meet Rule 9(b)'s particularity requirement because GEICO fails to plead with adequate particularity any specific facts supporting the alleged conspiratorial agreement. As currently pled, the complaint alleges nothing more than individual fraudulent acts perpetuated simultaneously, but does not assert that the individual defendants had the knowledge that these acts were contributing to a common tortious plan or enough facts to reasonably so infer. Accordingly, Count II is dismissed.[12]

### 2. Tortious Interference (Count VI)

Under Massachusetts law,

a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated

---

[12] There exists a second theory of conspiracy under Massachusetts law, known as "true conspiracy" or "coercive conspiracy," under which a defendant may be liable for conspiracy where "concerted action gave the defendants a 'peculiar power of coercion' over the plaintiff enabling them to bring about results that are different in kind from what any of them could achieve individually" and "[t]he exercise of this 'peculiar power of coercion' is itself the wrong." Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D.

involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result.

Int'l Floor Crafts, Inc. v. Adams, 477 F. Supp. 2d 336, 339 (D. Mass. 2007).

The Court cannot locate in the complaint any allegations regarding the depletion of PIP insurance available to individuals insured by GEICO or factual allegations that would allow the Court to reasonably make this inference. Moreover, GEICO has failed to plead that "the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship, resulting in damage." See Vranos v. Skinner, 930 N.E.2d 156, 165 (Mass. App. Ct. 2010) (quoting Buster v. George W. Moore, Inc., 783 N.E.2d 399, 414 (Mass. 2003)). GEICO identifies the relationships at issue as those between itself and its insureds. Compl. ¶ 626(a) ("At all times material to this Complaint, GEICO enjoyed advantageous business relationships with its insureds."). Beyond the mere conclusion that there was actionable intentional interference with these relationships, however, there are no factual allegations supporting the claim; specifically, the Court cannot infer that Barron induced the insureds to disrupt their relationships with GEICO in any way. Accordingly, Count VI is dismissed.

## IV.     CONCLUSION

For the reasons stated above, the special motion to dismiss [ECF No. 21] is DENIED, and the motion to dismiss for failure to state a claim [ECF No. 19] is GRANTED IN PART AND DENIED IN PART. Specifically, it is granted with respect to Counts II (civil conspiracy), III

---

Mass. 1999). True conspiracy is "rare" and "very limited." Id. at 244. Barron's brief assumes that GEICO alleges only the first civil conspiracy theory, but the Court cannot glean, either from the complaint or GEICO's brief, which it means to assert or whether it intended to assert both. To the extent that GEICO intended to assert a true conspiracy claim, it fails for the same reasons as the substantial assistance theory.

(money had and received), V (breach of contract), and VI (intentional interference with advantageous business relationships), and denied with respect to Counts I (common law fraud) and IV (Chapter 93A).[13] GEICO, however, may move for leave to amend its complaint with respect to the Counts II and VI (civil conspiracy and intentional interference).

      **SO ORDERED.**

Dated: August 16, 2017                       /s/ Allison D. Burroughs
                                                ALLISON D. BURROUGHS
                                                U.S. DISTRICT JUDGE

---

[13] The Court does not address any new arguments raised by Barron in its reply brief, including the issue of individual liability, because arguments raised for the first time in the reply brief are considered waived. See NExTT Sols., LLC v. XOS Techs., Inc., 113 F. Supp. 3d 450, 458 (D. Mass. 2015) ("Because that legal argument was raised for the first time in a reply brief, it is considered waived for the purpose of the instant motion to dismiss . . . .").